**Lawron COLEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–94–074–CR.**

Court of Appeals of Texas,
Waco.

Nov. 18, 1998.

Robert J. Reagan, Doyle Ross Jackson, Reagan & Jackson, L.L.P., Dallas, for appellant.

John Vance, Criminal District Attorney, Kimberly Schaefer, Assistant District Attorney, Dallas, Robert Huttash, State's Attorney, Austin, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

VANCE, Justice.

Lawron Coleman was convicted of murder and sentenced to twenty-five years' confinement. On original submission, we determined that the court erred in quashing the subpoenas of two newspaper reporters because they failed to demonstrate a basis for quashing the subpoenas, thereby violating Coleman's Sixth Amendment right to compulsory process. *See Coleman v. State,* 915 S.W.2d 80 (Tex.App.—Waco 1996), *rev'd,* 966 S.W.2d 525 (Tex.Crim.App.1998).[1] After initially affirming our decision, the Court of Criminal Appeals determined on rehearing that Coleman "did not make the necessary showing" of materiality, reversed the decision, and remanded the cause to us. We now consider Coleman's remaining points of error, all of which deal directly with the punishment stage of trial.

---

1. Because the facts were sufficiently detailed in our original opinion and in the opinion of the Court of Criminal Appeals, we do not reiterate them here.

## SUFFICIENCY

In issue three, Coleman complains that "the trial court erred in granting judgment on the verdict because the evidence on punishment was factually insufficient." He further complains that "the evidence of character and the extraneous bad acts are deficient because the evidence lacks the reliability and foundation necessary for its proof." His argument revolves around the complaint that the State offered character evidence from witnesses who had knowledge of specific acts performed by Coleman, but who did not have personal knowledge of his reputation prior to commission of the crime charged. Coleman failed to object to any of the punishment testimony.

■ Coleman points to specific evidence and urges that "no foundation was laid to show that the witness[es] had personal knowledge of appellant's reputation." He further complains that "the extraneous bad acts that the witness[es] testified to were based on hearsay and not personal knowledge." Although couched as a sufficiency complaint, these are not sufficiency arguments. These are arguments against the admissibility of the evidence which were not preserved for our review. *See* TEX.R.APP. P. 33.1.

■ In a sufficiency challenge, all evidence adduced at trial is considered whether or not properly admitted. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App.1992). Thus, Coleman's argument is without merit. Issue three is overruled.

## THE CHARGE

Coleman's fourth, fifth, and sixth issues complain that the punishment charge is fundamentally defective because it does not contain instructions and definitions as required by article 37.07, section 3(a) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998).[2] Coleman concedes that no objections were made to the charge.

---

**2.** The language in question was added to article 37.07 in 1993 and was effective at the time of Coleman's trial.

## Article 37.07

■ The charge instructed the jury to "take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge and the charge heretofore given to you by the Court herein." Coleman complains that the instruction should have read, "you may take into consideration the facts shown by the evidence admitted before you in the full trial of this case, the evidence admitted during the punishment phase of this trial, and the law as submitted to you in this charge and the charge heretofore given to you by the Court herein." He also asserts that the jury should have been instructed to "consider the criminal record of the defendant, his general reputation, his character, an opinion based on his character, the circumstances of the offense for which the defendant is being tried, any other evidence of an extraneous bad act that is shown beyond a reasonable doubt by the evidence to have been committed by the defendant." Coleman relies on article 37.07, section 3(a) to support his argument. He argues without authority that the requirements of this section should have been outlined in the charge.

Prior to amendment, Article 37.07, section 3(a) of the Code of Criminal Procedure stated that evidence, so long as it is permissible under the rules of evidence, may be offered as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation, and his character. TEX.CODE CRIM. PROC. ANN art. 37.07, § 3(a) (Vernon 1981)[3]; *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim.App.1995); *Tennison v. State*, 969 S.W.2d 578, 581–82 (Tex.App.—Texarkana 1998, no pet. h.). In *Grunsfeld v. State*, the Court of Criminal Appeals interpreted this provision to grant the trial court great latitude in the admission of evidence deemed relevant as long as its admission is otherwise permitted by the rules of evidence. *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.

---

**3.** See Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759.

App.1992); *Mock v. State*, 848 S.W.2d 215, 225 (Tex.App.—El Paso 1992, pet. ref'd). Evidence of unadjudicated offenses was not admissible. *Id.*

In 1993, the Legislature responded to *Grunsfeld* and deleted "as permitted by the Rules of Evidence" from the language of article 37.07, thus broadening the scope of admissible evidence during the punishment phase of a trial to that which the court deems "relevant," including unadjudicated extraneous offense evidence. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1998)[4]; *Mitchell v. State*, 931 S.W.2d 950, 952 (Tex. Crim.App.1996); *Escovedo v. State*, 902 S.W.2d 109, 114 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). In doing so, the Legislature did not have to add safeguards regarding the admission of this evidence because safeguards already existed within the statute. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(b) (Vernon 1981). Section 3(b) of article 37.07 states:

> After the introduction of such evidence has been concluded, and if the jury has the responsibility of assessing the punishment, the court *shall* give such additional written instructions as may be necessary and the order of procedure and the rules governing the conduct of the trial shall be the same as are applicable on the issue of guilt or innocence.

*Id.* (emphasis added). Thus, it is statutorily mandated that instructions be given at the close of the punishment phase *as necessary.*

**Instruction on burden of proof**

Although we reject Coleman's contention that article 37.07 should have been recited within the charge, we recognize that his suggested instruction includes language defining the burden of proof of extraneous offense evidence admitted at the punishment hearing. In reviewing the charge, we find that no such instruction was given. This leads us to first review whether evidence of extraneous offenses was admitted to invoke the need for an instruction.

During the punishment phase, the State offered testimony about Coleman's reputation. Evidence of extraneous conduct was also admitted, although couched in terms of character and opinion testimony. For example, Wayne Coates testified about Coleman's character and reputation while incarcerated as a juvenile. During his testimony, Coates was asked to "describe" any problems that he had witnessed concerning Coleman and a particular employee at the juvenile center. Coates responded, "There was one incident where he came down the hallway with his penis in his hand shouting to her, 'Fuck you, bitch. Fuck all you whores.'" Clearly, this is evidence of extraneous conduct that must be proven beyond a reasonable doubt prior to its consideration by the jury. *Id.* Because Coleman has conceded that no instruction was requested, we must determine whether the court had a duty to instruct the jury even when none was requested.

In *Mitchell,* the Court of Criminal Appeals determined that denying a requested instruction regarding the State's burden at punishment is error. *Mitchell,* 931 S.W.2d at 954. The Court did not address whether the trial court must give such an instruction when not requested. Since *Mitchell,* other courts of appeals have attempted to answer this question, and the results are conflicting. Whether or not a *Geesa*[5] definition of reasonable doubt was given, a question we will address in detail later, muddles the question further.

**Is failure to request an instruction on burden waiver?**

The Fort Worth and Corpus Christi Courts have declined to consider a complaint about the lack of an instruction when there was no request. *See Tow v. State,* 953 S.W.2d 546, 548 (Tex.App.—Fort Worth 1997, no pet.); *Guerra v. State,* 942 S.W.2d 28, 34–35 (Tex.App.—Corpus Christi 1996, pet. ref'd). In unpublished opinions, three other courts have done likewise.[6]

---

4. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759.

5. In *Geesa v. State*, the Court of Criminal Appeals adopted an instruction defining reasonable doubt that must be submitted to the jury, even in the absence of an objection or request, during the guilt-innocence phase of trial. 820 S.W.2d 154, 162 (Tex.Crim.App.1991).

6. *See Nieto v. State,* 01–96–1428–CR, 1998 WL 723701, *1 (Tex.App.—Houston [1st Dist.] October 1, 1998) (not designated for publication); *Tijerina v. State,* 07–97–259–CR, 1998 WL

■ Some courts interpret *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998), to require an objection or request to avoid waiver on appeal. We interpret *Posey* to require action only when the charge wholly omits a defensive issue. Ordinarily, charge error cannot be waived by silence. The *Almanza* egregious harm standard still applies. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985) (opinion on rehearing); *Kucha v. State*, 686 S.W.2d 154, 155 (Tex.Crim.App. 1985) (applied to the punishment charge).

**Is omission of the burden instruction, when necessary, error? If so, of what magnitude?**

■ The San Antonio Court has found error when the court failed to include "some manner" of an instruction regarding the State's burden at punishment when evidence of extraneous offenses was admitted. *See Huizar v. State*, 966 S.W.2d 702, 708 (Tex. App.—San Antonio 1998, review granted). However, the Court did a harm analysis under Rule of Appellate Procedure 44.2(a) and remanded for a new punishment hearing. *See Id.;* TEX.R.APP. P. 44.2(a). Although we agree that it is error for the punishment charge to be devoid of an instruction regarding the state's burden when evidence of extraneous offenses has been admitted, we disagree that constitutional rights are implicated. *See Coble v. State*, 871 S.W.2d 192, 208 (Tex.Crim.App.1993) (holding that the failure to give a specific instruction is not error as long as the charge sets forth the state's burden of proof). Not seeing the error as "structural," we believe that *Al-*

*manza* applies.[7] If the instruction was requested, the test is "some harm," if not, the defendant must show "egregious harm." *Almanza*, 686 S.W.2d at 171.

**Is omission of the reasonable-doubt definition error? If so, of what magnitude?**

■ In light of the Court of Criminal Appeals' holding in *Reyes v. State*[8], we believe it is necessary to review whether the omission of a reasonable-doubt definition in the punishment charge is error.[9] San Antonio found error where the jury was given an article 37.07 instruction on the burden of proof but reasonable doubt was not defined. *Fields v. State*, 966 S.W.2d 736, 741 (Tex. App.—San Antonio 1998, review granted). There was no objection, and reasonable doubt had been previously defined during the guilt-innocence phase. Relying on section 3(b) of article 37.07, the Court found "reversible error" under Rule 44.2(a) and remanded for a new sentencing hearing. *See* TEX. R.APP. P. 44.2(a). Under these circumstances, we would not find error. As long as reasonable doubt was defined for the jury at the guilt-innocence phase, a defendant is not entitled to it at punishment.[10]

■ The Dallas Court of Appeals faced a situation where the defendant pled guilty and had a jury trial on punishment. *Splawn v. State*, 949 S.W.2d 867 (Tex.App.—Dallas 1997, no pet.). The charge contained an appropriate instruction as to the burden on extraneous offenses, but the defendant requested that a *Geesa* reasonable-doubt defi-

295506, *1 (Tex.App.—Amarillo June 8, 1998)(not designated for publication); *Campbell v. State*, 06–97–133–CR, 1998 Tex.App. LEXIS 2935, *6–8 (Tex.App.—Texarkana May 19, 1998)(not designated for publication).

7. Other courts have applied *Almanza*. *See Ewing v. State*, 971 S.W.2d 204, 211 (Tex.App.—Beaumont 1998, no pet. h.) (no harm under *Almanza* where the trial court failed to give either an unrequested instruction on the State's burden regarding extraneous offense evidence or a *Geesa* definition); *Cormier v. State*, 955 S.W.2d 161, 163–64 (Tex.App.—Austin 1997, no pet.) (presumed error when the instruction was given but the reasonable doubt definition was not and found no harm under *Almanza*); *see also Poole v. State*, 974 S.W.2d 892, 900–01 (Tex.App.—Austin

1998, no pet. h.) (neither the instruction nor the definition was given).

8. The Court of Criminal Appeals held in *Reyes* that the exclusion of an instruction on reasonable doubt at the guilt-innocence phase of trial is error that is not subject to a harm analysis. *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim. App.1996).

9. Complaints about the omission of a reasonable-doubt definition from the punishment charge cannot be waived by a failure to request or object.

10. This should particularly be true when the court, as here, directed the jury to consider the prior charge.

nition also be given. *Id.* at 873–74. The Court held that, given the importance of the *Geesa* paragraphs defining reasonable doubt, they must be included in the jury charge at the punishment phase when requested, *especially* when it is the only charge that the jury receives. *Id.* at 874. Recognizing that *Reyes* mandates automatic reversal when the instruction on reasonable doubt is excluded from the guilt-innocence charge, the Court distinguished this situation and, relying on *Mitchell v. State* and *Matchett v. State,* found no harm.[11] *Id.; Matchett v. State,* 941 S.W.2d 922, 928 (Tex.Crim.App.1996); *Reyes v. State,* 938 S.W.2d 718, 721 (Tex.Crim.App. 1996).

Fort Worth reached a similar result, finding error where the court failed to define reasonable doubt regarding enhancement allegations. *See Martinez v. State,* 969 S.W.2d 139, 140–41 (Tex.App.—Fort Worth 1998, no pet. h.). In *Martinez,* the appellant pled guilty to possession of marijuana, but denied the enhancement paragraph of the indictment and elected to have a jury determine punishment. The jury found the enhancement allegation "true." On appeal, Martinez argued that, although the charge instructed the jury to determine whether the enhancement allegation was true beyond a reasonable doubt, the omission of a reasonable-doubt definition mandated reversal even though he failed to object. The Court, recognizing that this particular punishment hearing was more akin to the guilt-innocence stage of trial because of the enhancement allegation, held that *Geesa* and *Reyes* mandate an instruction under such circumstances. *Id.* at 140.

The Court emphasized the distinction between enhancement allegations and extraneous offense evidence, particularly regarding the range of punishment. While enhancement allegations can potentially change the range of punishment, the Court noted, extraneous-offense testimony merely influences the appropriate amount of punishment within the same range. *Id.* at 141. Thus, the Court treated a plea of "not true" to enhancement allegations as a plea of not guilty. Finding this error to be precluded from a harm analysis, *Martinez* was remanded for a new trial on punishment. *Id.*[12]

██ We would agree with both Fort Worth and Dallas that a duty to give the definition of reasonable doubt arises when none was previously given (presumably because the defendant pled guilty). We would follow the Dallas Court and, rather than remand automatically, review the record to determine whether the individual case is in fact capable of being subjected to a meaningful harm analysis. *Splawn,* 949 S.W.2d at 874.

██ If a court fails to define reasonable doubt in the guilt-innocence phase, there is no dispute that *Reyes* mandates reversal. However, if a court fails to define reasonable doubt at punishment and there has been no instruction at guilt-innocence, the case may or may not be subject to *Almanza.*[13] For example, if the defendant concedes that he committed the extraneous offenses as represented by the evidence, a definition will not change the jury's decision. Thus, it may be possible to assess the effects of such an error on appeal.

**Summary**

With the exception of the *Posey*-type cases, a failure to request an instruction or a

---

11. In *Mitchell v. State,* the Court remanded for a harm determination under *Almanza.* 931 S.W.2d 950, 954 (Tex.Crim.App.1996). In *Matchett v. State,* 941 S.W.2d 922, 928 (Tex. Crim.App.1996), the Court of Criminal Appeals held that, although certain types of error are precluded from a harm analysis, courts should make a case by case determination of whether a meaningful analysis is possible. Although failure to follow *Geesa* at guilt-innocence results in error which is categorically immune to a harm analysis, this is not necessarily so at the punishment charge.

12. Although we do not agree that the error always precludes a harm analysis, we believe the Fort Worth Court's analysis regarding error should be extended to extraneous-offense evidence. One could argue that the need for the instruction is greater when there is extraneous-offense evidence because those offenses have not been proven in a prior proceeding while there has already been a finding of guilty of offenses being used to enhance punishment.

13. *Matchett,* 941 S.W.2d at 928.

failure to object to the charge does not result in waiver. *Posey*, 966 S.W.2d at 57; *Almanza*, 686 S.W.2d at 171.

When evidence of extraneous offenses is admitted during the punishment phase, the court must instruct the jury that it may not consider such offenses unless it find beyond a reasonable doubt that they were committed by the defendant. *See Coble*, 871 S.W.2d at 208. If the court fails to so instruct the jury, the error will be assessed for "some harm" or "egregious harm" as dictated by *Almanza*.

When the term "reasonable doubt" is used in the charge at the punishment phase, the court need not define that term if it was previously defined in the guilt-innocence charge. If the term is used in the punishment charge and there was no guilt-innocence charge, the court must define it in the punishment charge, and failure to do so constitutes error. That error will also be assessed for "some harm" or "egregious harm" as dictated by *Almanza*.

### Application

■ The jury received a reasonable-doubt definition at the guilt-innocence phase, but none was given at punishment. We find no error in this omission. However, the jury was not instructed in any manner about the state's burden at punishment. We find this omission to be error. *See id.* Because there was no request, we will apply the *Almanza* egregious-harm standard to determine whether Coleman is entitled to a new punishment hearing. *Almanza*, 686 S.W.2d at 171.

■ Charge error must be reviewed "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Ewing v. State*, 971 S.W.2d 204, 211 (Tex.App.—Beaumont 1998, no pet. h.) (citing *Almanza*, 686 S.W.2d at 171). The State's evidence at punishment consisted of stipulations regarding three previously adjudicated offenses and the testimony of five witnesses. Coleman did not contest the three prior offenses. The testimony was predominately that of opinions regarding Coleman's reputation for being a peaceful and law-abiding citizen. Coleman did not dispute the testimony regarding specific instances of conduct. Coleman testified that "most of what they said was true." On cross-examination, Coleman did deny some of the instances to which others had testified, but he admitted that most of it was true. When asked whether he was looking for mercy or justice from the jury, Coleman testified, "Neither one. I just want them to look at the circumstances of what happened and I'm not looking for sympathy. I know I have to pay the price for what I done, so I'm not looking for justice or mercy, either one." The fact that Coleman killed the victim was never contested. He merely contested whether he intended to kill the victim. Coleman testified that he intended only to scare the victim.

The prosecutor's closing arguments focused primarily on the heinous nature of the murder with which Coleman was charged. Defense counsel approached the extraneous-offense evidence strategically. He argued:

Now, I know the State is going to and already have tried to bring as many bad things as they can against this young man over here. If you want to take what he did as an eight year old and nine year old and ten year old and twelve year old and thirteen year old, send him to the pen for that for life. That's fine. Go ahead and do that. He was a kid then. If you want to take that into consideration, just go right ahead and do so. He was a kid. If you want to hold that against him for what he did, go right ahead and do that.

The range of punishment was five to ninety-nine years. The jury assessed twenty-five years. Nothing in the record suggests that the jury would have considered the extraneous offenses differently if the burden-of-proof instruction had been included in the charge. *See Escovedo*, 902 S.W.2d at 115. Considering the evidence and other *Almanza* factors, we do not believe that Coleman was egregiously harmed by the omission of the instruction. Coleman's fourth, fifth, and sixth issues are overruled.

## CONCLUSION

Coleman's sufficiency complaints are not well founded. Concerning the charge at the punishment phase of trial, the court did not include an instruction on the burden of proof of extraneous conduct committed by Coleman and did not define reasonable doubt. We have found that no instruction defining reasonable doubt was required and that the failure to instruct on the burden of proof did not egregiously harm Coleman. Having overruled all of the additional issues Coleman presented, we affirm the judgment.