**Eddie Maurice DICKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–97–338–CR.**

Court of Appeals of Texas,
Waco.

Feb. 24, 1999.

---

Terry M. Casey, Casey & Colosi, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Steven Waller Conder, Amy Jo Collum, Asst. Dist. Attys., Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

# O P I N I O N

REX D. DAVIS, Chief Justice.

A jury convicted Appellant Eddie Maurice Dickson of two counts of delivery of a controlled substance in an amount less than one gram, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.1999). The State alleged two prior felony convictions to enhance Dickson's punishment to a second degree felony. *See* TEX. PEN.CODE ANN. § 12.42(a)(2) (Vernon Supp. 1999). The State also alleged two additional prior felony convictions to enhance his punishment to that for an habitual offender. *Id.* § 12.42(d). Prior to the commencement of the punishment phase however, the State waived the habitual allegation and sought to further enhance Dickson's punishment to that for a first-degree felony. *Id.* § 12.42(b). The jury found all the enhancement allegations true and sentenced Dickson to fifty-five years' imprisonment and a $2,500 fine on both counts.

Dickson presents seven points of error in which he challenges: (1) the State's attempt to enhance the punishment for the non-aggravated state jail felony offenses alleged to that for a first degree felony; (2) the court's instruction informing the jury that his sentences would run concurrently; (3) the admission of an officer's testimony describing how he became familiar with Dickson because of his work as a beat officer in a housing project where illegal drugs are apparently bought and sold; (4) the court's failure to give the jury a limiting instruction regarding this testimony in the punishment charge; (5) the court's failure to define the term "reasonable doubt" in the punishment charge; and (6) the court's overruling of his objection to the State's closing argument. We will reverse the judgment and remand this cause for a new punishment hearing.

## THE GUILT–INNOCENCE PHASE

Dickson presents two points alleging errors during the guilt-innocence phase of his trial. His fourth point asserts that the court erred in admitting an officer's testimony that he knew Dickson from his work as a beat officer in a certain housing project because the probative value of this testimony when combined with other questions asked by the State is substantially outweighed by the danger of unfair prejudice. His seventh point contends that the court erred in overruling his objection to a portion of the State's closing argument which allegedly struck at him over his counsel's shoulders.

### A. THE OFFICER'S TESTIMONY

■ Officer D.A. Sullivan witnessed a portion of the transactions in question and identified Dickson as the person who committed the offenses. He testified that he first became acquainted with Dickson when he was a beat officer in a certain housing project. The court granted Dickson a running objection to Sullivan's testimony of how he became familiar with Dickson. He saw Dickson "on a weekly basis" over the two years he worked this assignment. After Dickson cross-examined Sullivan concerning his involvement in the arrest, the officer testified on redirect that he had conducted narcotics investigations for six years "in or around" Dillard Street on which Dickson approached his fellow undercover officer to sell the drugs for which he was convicted in this case.

The prosecutor then asked, "And are you familiar with the practices of—of people dealing drugs in those locations?" The court sustained Dickson's relevance objection and instructed the jury to disregard the prosecutor's question. The court denied Dickson's motion for mistrial.

Dickson's fourth point complains that the prosecutor's question about drug dealing on Dillard Street when combined with Sullivan's testimony that he had conducted narcotics investigations there for six years and saw Dickson in the housing project on a weekly basis unfairly prejudiced Dickson by suggesting that he dealt drugs in the project.[1]

---

1. We assume based on counsel's argument that the housing project is located in the Dillard Street area. However, the record does not bear this out.

At Dickson's request, the court promptly instructed the jury to disregard the question which forms the basis for his complaint. Under prior case law, such an instruction generally cured or rendered harmless any error arising from an improper question propounded by the prosecution except in "extreme cases where ... the question ... [was] clearly calculated to inflame the minds of the jury and [was] of such a character so as to suggest the impossibility of withdrawing the impression produced." *Carter v. State,* 614 S.W.2d 821, 824–25 (Tex.Crim.App. [Panel Op.] 1981); *accord Huffman v. State,* 746 S.W.2d 212, 218 (Tex.Crim.App.1988).

■ Under the new appellate rules however, we must disregard such errors unless we determine they affected an appellant's substantial rights. TEX.R.APP. P. 44.2(b); *see also Maibauer v. State,* 968 S.W.2d 502, 508 (Tex.App.—Waco 1998, pet. ref'd) (improper jury argument). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

The prejudicial implication perceived by Dickson is weak at best, especially in light of the fact that no evidence exists in the record to show that the housing project is located near Dillard Street. After considering the tenuous nature of the implication perceived by Dickson and the court's prompt instruction to disregard, we conclude the prosecutor's question did not affect Dickson's substantial rights. TEX.R.APP. P. 44.2(b); *Maibauer,* 968 S.W.2d at 508. Accordingly, we overrule Dickson's fourth point.

### B. THE STATE'S ARGUMENT

■ Dickson contends in his seventh point that the court erred in overruling his objection to a portion of the State's closing argument during the guilt-innocence phase which allegedly struck at him over his counsel's shoulders.

Dickson argued to the jury that the State offered no evidence that when he was arrested he had the five dollars in his possession which the undercover officer allegedly paid him for the narcotics. Thus, he concluded the officers must have arrested the wrong person. The State responded:

> The other thing about the money. The Defense counsel says that he says the defendant didn't have the $5 on him when he was arrested. That's outside the evidence. That's unsupported by the evidence. That [sic] an inaccurate statement.

After the court overruled Dickson's objection to this argument and his motion for mistrial, the State continued:

> What's in evidence? We don't know whether he had the $5 on him. That's what's really in the evidence because nobody asked. That's what's in evidence, right? Maybe he had the $5 on him, maybe he didn't. We don't know.

The State continued on briefly with similar arguments before turning to other aspects of the case.

■ Appropriate jury argument includes:

(1) summation of the evidence;

(2) reasonable deductions from the evidence;

(3) response to opposing counsel's argument; and

(4) a plea for law enforcement.

*Cantu v. State,* 939 S.W.2d 627, 633 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). Argument which strikes at an accused over the shoulders of his counsel is inappropriate and will require reversal if not found harmless. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex. Crim.App.1995).

By the argument complained of in this case, the State merely responded to Dickson's argument that the prosecution had failed to show that when arrested he had the five dollars allegedly paid him for the narcotics. This argument was proper, and no error is shown. Thus, we overrule Dickson's seventh point.

## THE PUNISHMENT PHASE

Dickson presents five points concerning alleged errors in the punishment phase of his trial. His first two points challenge the legality of his sentence. His third point avers that the court erred by instructing the jury at the State's request that any sentences assessed would run concurrently. His fifth point complains that the court erred by failing to instruct the jury that it could not consider Officer Sullivan's testimony about his familiarity with Dickson unless it believed the testimony beyond a reasonable doubt. His sixth point asserts that the court erred in wholly failing to define the term "reasonable doubt" in the punishment charge.

### A. DICKSON'S SENTENCE

■ Dickson's first point contends that a state jail felony punishable under section 12.35(a) of the Penal Code (a "non-aggravated state jail felony") cannot be enhanced to the level of a first degree felony under section 12.42(b). See TEX. PEN.CODE ANN. § 12.35(a) (Vernon 1994), § 12.42(b). His second point avers that the court erred in submitting a punishment charge which permitted the jury to sentence him for a first degree felony.

Because of prior sequential felony convictions, Dickson's punishment was enhanced to the level of a second degree felony under section 12.42(a)(2).[2] The question we must answer is whether the enhancement of Dickson's punishment also constitutes an enhancement of the degree of the offense of which he was convicted. We hold that it does not.

The jury convicted Dickson of two non-aggravated state jail felony offenses. The degree of these offenses did not change by virtue of his prior criminal record. Cf. TEX. PEN.CODE ANN. §§ 31.03(e)(4)(D), 49.09(b) (Vernon Supp.1999) (elevating ordinarily misdemeanor offenses of theft and DWI to felo-

nies). Accordingly, we conclude that when a person is convicted of a non-aggravated state jail felony his punishment may be further enhanced only under the provisions of section 12.42(a)(1) or (2). See id. § 12.42(a)(1), (2). The degree of the offense remains unchanged; only the punishment is enhanced. Our conclusion finds further support when we examine the application of section 12.42 to each of the degrees of offenses provided for by the Penal Code.

Punishment for a non-aggravated state jail felony offense can be enhanced to the level of a third degree felony if the defendant has two prior state jail felony convictions. Id. § 12.42(a)(1). With two prior, sequential felony convictions for other than state jail felonies, punishment is enhanced to the level of a second degree felony. Id. § 12.42(a)(2). This is the highest level to which punishment can be enhanced for a non-aggravated state jail felony.

Section 12.42 treats aggravated[3] state jail felonies and third degree felonies as equivalents. Thus, with one prior felony conviction, these offenses are punished as second degree felonies. Id. § 12.42(a)(3). With two prior, sequential felony convictions, the punishment is enhanced to the level of that for an habitual offender. Id. § 12.42(d).

If a person convicted of a second degree felony has one prior felony conviction, his punishment is enhanced to the level provided for a first degree felony. Id. § 12.42(b). If a person convicted of a first degree felony has one prior felony conviction, section 12.42(c)(1) increases the minimum range of punishment from five to fifteen years. Id. § 12.42(c)(1). For either a second degree or a first degree felony, if the defendant has two prior, sequential felony convictions, his punishment is assessed at the level provided for an habitual offender. Id. § 12.42(d).

2. The term "prior" felony conviction refers to a "final" conviction as required by subsections (a), (b), (c), and (d) of section 12.42. See TEX. PEN. CODE ANN. § 12.42(a), (b), (c), (d) (Vernon 1994 & Supp.1999).

3. A state jail felony is "aggravated" under section 12.35(c) if the accused used or exhibited a deadly weapon during the commission of the offense or had been previously convicted of a felony listed in article 42.12, section 3g(a)(1) or for which an affirmative deadly weapon finding was made. See TEX. PEN.CODE ANN. § 12.35(c) (Vernon 1994).

In our view, this represents the Legislature's intent in adapting enhancement provisions which had existed relatively unchanged since 1974 to the state jail felony offenses it created in 1994. Under these provisions, punishment for a non-aggravated state jail felony offense enhanced under section 12.42(a)(2) cannot be further enhanced under the provisions of section 12.42(b). Thus, we sustain Dickson's first and second points.

Having found error requiring reversal, we will remand this cause for a new punishment hearing. However, we must address additional points asserted by Dickson which raise issues likely to arise during the new punishment hearing. *See Cook v. State,* 940 S.W.2d 623, 627–28 (Tex.Crim.App.1996) (addressing admissibility of evidence in the event of a retrial).

### B. THE COURT'S INSTRUCTION ON CONCURRENT SENTENCES

█ Dickson complains in his third point that the court erred by instructing the jury that his sentences would run concurrently. At the State's request, the court instructed the jury that Dickson would serve the sentences assessed for each offense concurrently. Dickson suggests this instruction was improper because it deprived him of any benefit he may have received from forfeiting his statutory right to a separate trial on each charge. *See* TEX. PEN.CODE ANN. § 3.04(a) (Vernon 1994).

When two offenses arising out of a single criminal episode are joined for prosecution in a single trial, the sentences assessed must run concurrently except in certain situations not applicable to Dickson's case. *Id.* § 3.03(a) (Vernon Supp.1999). If the accused elects to sever the offenses for separate trials however, "the court in its discretion may order the sentences to run either concurrently or consecutively." *Id.* § 3.04(b) (Vernon 1994).

The Court of Criminal Appeals has held that a court does not abuse its discretion by submitting an instruction informing the jury that sentences will run concurrently in a case such as Dickson's and that such information is "a proper matter for jury consideration." *Haliburton v. State,* 578 S.W.2d 726, 729 (Tex.Crim.App. [Panel Op.] 1979); *accord Gordon v. State,* 633 S.W.2d 872, 879 (Tex. Crim.App. [Panel Op.] 1982); *but see Gordon,* 633 S.W.2d at 879 n. 16 (where Judge Clinton recognized that *Haliburton* was dispositive but advocated a reexamination of the holding by the Court *en banc* ).

In *Haliburton,* the Court squarely addressed Dickson's assertion that the court's instruction deprived him of any benefit he may have received from forfeiting his statutory right to separate trials. The Court stated:

> There is no guarantee in Sec. 3.03 that a joint trial of the offenses will result in a less severe penalty than separate trials of the same offense. We find the only benefit assured appellant by the language of Sec. 3.03 is concurrent sentencing. The inducement to appellant not to seek a severance of joined offenses is that his risk will be reduced (not eliminated) because the sentencing will be concurrent as opposed to consecutive.
>
> The policy of the law should require juries to make informed and intelligent decisions based on every piece of information legally available. The effect of appellant's argument would exclude information from the jury hoping that in their ignorance the jury would return a less severe punishment. Such a result is not supported by law or logic.

*Haliburton,* 578 S.W.2d at 729 (citations and footnotes omitted).

The Court of Criminal Appeals has not accepted Judge Clinton's invitation to reexamine this holding. Neither shall we.[4] Thus, we overrule Dickson's third point.

---

4. *Haliburton v. State* was decided by a panel of the Court of Criminal Appeals with Judges W.C. Davis and Leon Douglas in the majority and Judge W.T. Phillips dissenting. 578 S.W.2d 726 (Tex.Crim.App. [Panel Op.] 1979). Judge Sam Houston Clinton authored the panel opinion in *Gordon v. State,* 633 S.W.2d 872 (Tex.Crim.App. [Panel Op.] 1982). Judge Wendell A. Odom joined in Judge Clinton's opinion. Judge Tom G. Davis concurred only in the result without authoring a separate opinion. Assuming Judge Davis did not agree with Judge Clinton's opinion on the point in question, of the six members participating in the two decisions, three ap-

## C. Officer Sullivan's Testimony

■ Dickson's fifth point asserts that the court erred by not instructing the jury in the punishment charge that it could not consider Officer Sullivan's testimony unless it believed such testimony beyond a reasonable doubt. Dickson suggests Sullivan's testimony constitutes "evidence of an extraneous crime or bad act" which under article 37.07, section 3(a) requires a reasonable doubt instruction. *See Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996); Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.1999).

The court submitted an instruction in the guilt-innocence charge limiting the jury's consideration of Sullivan's testimony to the issue of identity if the jury believed his testimony beyond a reasonable doubt. *See* Tex. R.Crim. Evid. 105(a), 404(b), 49 Tex. B.J. 221, 223 (Tex.Crim.App.1986, repealed 1998). At the beginning of the punishment phase, the State "re-offer[ed] that evidence which was admitted in the guilt-innocence phase." *See Duffy v. State,* 567 S.W.2d 197, 208 (Tex. Crim.App.1978); *Ashcraft v. State,* 934 S.W.2d 727, 740 (Tex.App.—Corpus Christi 1996, pet. ref'd); Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a). The court instructed the jury in the punishment charge that it "may take into consideration all the evidence submitted to [it] under this charge" in assessing punishment. The State did not make further reference to Sullivan's testimony about his prior contacts with Dickson.

■ Dickson describes Sullivan's testimony as evidence of "extraneous acts" or "extraneous matters." He does not refer to this testimony as evidence of an "extraneous crime or *bad* act." *Cf.* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (emphasis added). As Dickson apparently concedes in this point,

Sullivan's testimony only went to the issue of Dickson's identity. As such, the court properly submitted a limiting instruction to the jury during the guilt-innocence phase. *See* Tex.R.Crim. Evid. 105(a), 404(b). Moreover, the jury may consider testimony admitted during the guilt-innocence phase when assessing punishment. *Duffy,* 567 S.W.2d at 208; *Ashcraft,* 934 S.W.2d at 740.

Sullivan's testimony does not constitute evidence of an extraneous crime or bad act. Thus, Dickson was not entitled to an article 37.07, section 3(a) instruction on reasonable doubt with respect to this testimony. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a). Accordingly, we overrule Dickson's fifth point.

## D. Reasonable Doubt Definition

■ Dickson contends in his sixth point that the court erred by wholly failing to define the term "reasonable doubt" in the punishment charge in conjunction with its instructions that the jury must find each of the enhancement allegations true beyond a reasonable doubt.

The Fort Worth Court of Appeals recently held that when a defendant pleads guilty to the offense alleged but not true to enhancement allegations the defendant is entitled to a definitional instruction on the term "reasonable doubt" and the failure to submit this definition to the jury is reversible error. *Martinez v. State,* 969 S.W.2d 139, 141 (Tex. App.—Fort Worth 1998, pet. granted).[5] This Court has recently decided in the context of an article 37.07, section 3(a) reasonable doubt instruction that "[w]hen the term 'reasonable doubt' is used in the charge at the punishment phase, the court need not define that

proved this instruction, and three did not. Only Presiding Judge McCormick of the present Court of Criminal Appeals was on the Court at the time of either decision. Perhaps the Court of Criminal Appeals should reconsider the issue, if only to reaffirm *Haliburton.*

5. On November 18, the Court of Criminal Appeals granted discretionary review on three issues: 1. Whether the court of appeals erred in concluding appellant did not waive error when he failed to request an instruction on the definition of "reasonable doubt" at the punishment

phase of his trial, after he had pled guilty? 2. Should a harm analysis under *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.), and article 36.19 apply to a failure to instruct the jury on the definition of "reasonable doubt" at the punishment phase? 3. Does a trial court commit automatic reversible error if it fails to *sua sponte* define "reasonable doubt" when instructing the jury to decide if an enhancement allegation is true beyond a reasonable doubt? *Martinez v. State,* No. 98–1255 (pending before the Court of Criminal Appeals).

term if it was previously defined in the guilt-innocence charge." *Coleman v. State*, 979 S.W.2d 438, 444 (Tex.App.—Waco 1998, no pet. h.).

In deciding *Coleman*, we reviewed *Martinez*, which addresses the need for a definitional instruction for enhancement allegations, as well as cases considering the need for such an instruction in the context of extraneous offenses admitted under article 37.07, section 3(a). *See id.* at 442–44. We will apply *Coleman* to both types of cases. Therefore, because the court submitted a correct definition of the term "reasonable doubt" in its charge on guilt-innocence, the court appropriately denied Dickson's request to provide that definition to the jury again in the punishment charge.[6] *Id.* at 444. Accordingly, we overrule Dickson's sixth point.

## CONCLUSION

The court erred by permitting the jury to assess Dickson's punishment under the provisions of section 12.42(b). Accordingly, we reverse the judgment and remand this cause for a new punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.1999).

CUMMINGS, J., not participating.

---

6. On a retrial of Dickson's punishment however, the new jury will not have had the benefit of the definitional instruction on reasonable doubt as there will not be a second guilt-innocence trial.

Accordingly, submission of the definition will be required on remand. *Coleman v. State*, 979 S.W.2d 438, 444 (Tex.App.—Waco 1998, no pet. h.).