**Rashard Lamod FRAZIER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–99–020–CR.

Court of Appeals of Texas, Waco.

March 15, 2000.

Brett L. Bigham, Waxahachie, for appellant.

Joe F. Grubbs, Dist. Atty., Cynthia W. Hellstern, Asst. Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

**O P I N I O N**

REX D. DAVIS, Chief Justice.

Rashard Lamod Frazier pleaded guilty before a jury to two counts of aggravated

robbery. *See* TEX. PEN.CODE ANN. § 29.03(a)(2) (Vernon 1994). The jury assessed his punishment at twenty-five years' imprisonment on each count. Because the offenses arose from the same criminal episode, the sentences run concurrently. *Id.* § 3.03 (Vernon Supp.2000). Frazier claims in three points that the court erred by: (1) failing to instruct the jury in the charge that it could not consider any extraneous crimes or bad acts shown by the evidence to have been committed by him unless it found that the State had proved such matters beyond a reasonable doubt; (2) admitting irrelevant punishment evidence; and (3) failing to permit counsel to withdraw.

## BACKGROUND

Frazier's court-appointed counsel filed a motion to withdraw eleven days before trial, citing "irreconcilable differences between attorney and client" and that "client has requested such withdrawal." The court denied the motion the same day it was filed. We have no record of any hearing on the motion.

The indictment alleges that Frazier committed these offenses against Daniel and Debra Patino when he "intentionally and knowingly threaten[ed] and place[d them] in fear of imminent serious bodily injury and death" "while in the course of committing theft of property and with intent to obtain and maintain control of said property." The indictment alleges that these are aggravated offenses by asserting that Frazier "did then and there use and exhibit a deadly weapon, to-wit: a firearm."

The record reflects that Daniel Patino drove up to an automatic teller machine (ATM) with his sister Debra at about 11:00 on the night in question. Debra was opening her window to use the ATM when they heard a voice they did not recognize. They saw Frazier standing at the passenger side of their car and pointing a rusty

handgun in the sunroof. When Frazier asked for money, they told him they had none. Another man emerged from a white Nissan Maxima, opened Daniel's door, and attempted to turn off the Patinos' car. Daniel then drove away from the scene, and they went to the police department to report what had happened. They described their assailants as black males, one wearing a blue t-shirt with yellow lettering and the other wearing a white sweatshirt.

A police officer located a Maxima matching the description given by the Patinos at approximately 11:30. The officer observed a black male the officer knew to be Anthony Harris driving the Maxima. Harris was wearing a blue sweatshirt with yellow lettering. After Harris ran a red light, the officer activated his overhead lights and siren. Harris refused to pull over, and a chase ensued. The Maxima collided with a utility pole after a brief pursuit. The officer's car rear-ended the Maxima, and the officer suffered minor head and ankle injuries.

Another pursuing officer saw Harris and a passenger abandon the Maxima. He could not identify the passenger beyond noting that he was a black male wearing a white shirt similar to the one described by the Patinos. The suspects avoided apprehension that evening. Officers recovered a rusty revolver from the floorboard of the Maxima. The Patinos both testified that the recovered weapon looks like the handgun held by Frazier.

A detective viewed the ATM videotape depicting the robbery. The videotape shows Frazier pointing the handgun in the Patinos' sunroof. After identifying Frazier and speaking with the owner of the Maxima, the detective prepared photographic lineups with Frazier and Harris.[1] The Patinos both selected the photographs of Frazier and Harris as the robbers. The detective obtained a warrant and arrested

---

1. The record is unclear on this point, but it appears that Harris does not own the Maxi- ma.

them. Frazier gave a statement in which he admitted committing the robbery. The detective never asked Frazier (and Frazier never volunteered) whether he was the passenger in the Maxima when it crashed.

Frazier's counsel informed the jury in his opening statement that he anticipated the evidence would show, among other things, that "Frazier was high on drugs at the time of the offense." The State offered evidence that Frazier has a 1995 juvenile adjudication of delinquency for the felony offense of possession of crack cocaine. Frazier called several witnesses in his behalf, including two aunts. One aunt testified that the juvenile probation department did not provide Frazier "any kind of drug counseling" or "any kind of therapy for any drug abuse problems he may have had." The other testified that she was "aware" of Frazier's "drug usage problem."

The State called Frazier's juvenile probation officer as a rebuttal witness. He provided the following pertinent testimony regarding a discussion he had with Frazier about his drug usage:

Q: With respect to drugs, was he questioned regarding his usage of drugs?

A: Yes.

Q: And what was his response to his usage of drugs?

A: He said that he had used marijuana and cocaine in the past, and that he had promised his parents that he was going to quit.

. . . .

Cross–Examination:

Q: Mr. Aldama, did Mr. Frazier ever get sent to any kind of drug rehabilitation program?

A: No, he did not.

Redirect Examination:

Q: Did he ever admit to a problem with drugs?

A: No, he did not.

Q: Was it more admitting to occasional use?

A: Yes.

During closing argument, both sides addressed Frazier's alleged drug problem and the impact, if any, it should have on his punishment. The jury sentenced Frazier as indicated above.

After conviction, Frazier's counsel filed a second motion to withdraw. The motion states in pertinent part:

Counsel for Defendant requests that he be allowed to withdraw as attorney for Defendant, and that the Court appoint new counsel for Defendant for the appeal of this matter. Counsel and Defendant have conflicts of interest which prevent Counsel from his continuing representation of Defendant.

At the beginning of the hearing on counsel's motion, the trial court noted that Frazier had already been transferred to prison. The court heard the motion despite Frazier's absence. Counsel identified no specific conflicts between Frazier and himself and requested that he be permitted to withdraw because Frazier is "dissatisfied" with his representation. The *court denied counsel's motion.*

**MOTION TO WITHDRAW**

■ Counsel argues in his third point that the court erred by denying his motions to withdraw from representation of Frazier. Counsel's first motion requests withdrawal because of "irreconcilable differences." The second motion asserts "conflicts of interest."

■ Generally, we will not reverse a trial court's ruling on a motion to withdraw absent an abuse of discretion. *Green v. State,* 840 S.W.2d 394, 408 (Tex.Crim.App. 1992); *Tuffiash v. State,* 948 S.W.2d 873, 878 (Tex.App.—San Antonio 1997, pet. ref'd). In this case, counsel did not offer any specific facts to support his assertion that a conflict of interest exists between Frazier and himself. Neither did he offer

any facts to demonstrate "irreconcilable differences" as alleged in the pretrial motion. Accordingly, we cannot say the court abused its discretion in denying these motions. *See Green,* 840 S.W.2d at 408; *Boston v. State,* 965 S.W.2d 546, 552 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). Thus, we overrule the third point.

## PUNISHMENT EVIDENCE

■ Frazier contends in his second point that the court erred in admitting evidence of the pursuit because the State's witnesses could not identify him as the passenger in the Maxima. The State responds that Frazier failed to preserve this issue for appellate review.

After the pursuing officer essentially concluded his testimony about the pursuit, the collision, and the suspects' abandonment of their car, the State offered in evidence two photographs of the wrecked Maxima. Frazier's counsel then made the following objection:

> Your Honor, at this time I'm going to object. This witness has already testified he couldn't identify any individual on the passenger side. I assume he has no evidence to prove my client was the person in this vehicle. This has no relevancy to this case unless he can do that.

The court promptly overruled the objection. Frazier did not object to the testimony of the other officer who participated in the pursuit.

■ We agree with the State that Frazier has not properly preserved this issue for review. Counsel did not object to the pursuing officer's testimony until after the officer had finished describing the pursuit and the injuries he sustained. Thus, the objection was not timely. *See* Tex.R.App. P. 33.1(a)(1). Even if we were to assume that the objection was timely because the need to object did not become apparent until the officer had concluded his testimony without identifying Frazier as the pas-

senger in the Maxima, Frazier failed to object to the second officer's testimony which recounted essentially the same facts as provided by the first officer's testimony. Thus, the error, if any, arising from the pursuing officer's testimony was rendered harmless. *See Leday v. State,* 983 S.W.2d 713, 718 & nn. 6–8 (Tex.Crim.App.1998).

Accordingly, we overrule Frazier's second point.

## REASONABLE DOUBT INSTRUCTION AT PUNISHMENT

■ Frazier asserts in his first point that the court erred by failing to instruct the jury in the charge that it could not consider any extraneous crimes or bad acts shown by the evidence to have been committed by him unless it found that the State had proved such matters beyond a reasonable doubt. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a), (b) (Vernon 1981 & Supp.2000); *Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996). He focuses on the evidence of the pursuit and the juvenile probation officer's testimony about his drug usage as areas of concern. The State counters that we should overrule this point because Frazier failed to request such an instruction and did not suffer "egregious harm" as a result of its omission. *See Kucha v. State,* 686 S.W.2d 154, 155 (Tex.Crim.App.1985) (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g)); *Coleman v. State,* 979 S.W.2d 438, 444 (Tex.App.— Waco 1998, no pet.); *Cormier v. State,* 955 S.W.2d 161, 163 (Tex.App.—Austin 1997, no pet.).[2]

The Court of Criminal Appeals has recently held that article 37.07, section 3(a) requires a trial court to submit a reasonable doubt instruction in the punishment charge regardless of whether the defendant requests such an instruction. *Huizar*

---

**2.** *Kucha* addresses punishment charge error, while *Almanza* concerns error in the guilt-innocence charge. *See Kucha v. State,* 686 S.W.2d 154, 155 (Tex.Crim.App.1985); *Almanza v. State,* 686 S.W.2d 157, 159 (Tex. Crim.App.1984).

*v. State,* 12 S.W.3d 479, 483–84 (Tex.Crim. App.2000) (op. on reh'g). If a trial court fails to submit such an instruction, then the appellate court should conduct the harm analysis prescribed in *Almanza. Id.* at 484–85.

According to *Almanza,* if a defendant does not object to an error in the charge, he may obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'— in short 'egregious harm.' " *Almanza,* 686 S.W.2d at 171 (quoting TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981)). In this case, Frazier failed to object to the absence of a reasonable doubt instruction in the punishment charge. Accordingly, we review the record to see whether he suffered "egregious harm" as a result of the omission of the instruction. *Id.*

The State properly proved up Frazier's two prior adult convictions and his juvenile adjudication with his fingerprints. *See McQueen v. State,* 984 S.W.2d 712, 719 (Tex.App.—Texarkana 1998, no pet.). Neither side made reference to the pursuit of the Maxima in closing arguments. *See Coleman,* 979 S.W.2d at 444. Both sides equally referred to Frazier's drug usage. *Id.* Accordingly, we conclude that Frazier did not suffer "egregious harm" as a result of the court's failure to submit a reasonable doubt instruction to the jury in the punishment charge. *See Almanza,* 686 S.W.2d at 171; *McQueen,* 984 S.W.2d at 719; *Coleman,* 979 S.W.2d at 444; *Cormier,* 955 S.W.2d at 163–64. Thus, we overrule his first point.

We affirm the judgment.