Kenneth James EWING, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–97–216 CR.

Court of Appeals of Texas, Beaumont.

Submitted July 20, 1998.

Decided July 29, 1998.

Stephen D. Jackson, Conroe, for appellant.

Michael McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Kenneth James Ewing was tried in a joint trial with his brother, Steven Ewing, for the murder of Lloyd Hicks.[1]  A jury found Ken-

---

1. Steven Ewing's conviction was affirmed by this Court on July 29, 1998, in Cause No. 09–97–221 CR (not designated for publication).

neth James Ewing guilty of murder and assessed punishment at fifty years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. Ewing raises twelve points of error on appeal. Since the appellant does not challenge the sufficiency of the evidence to sustain the conviction, we will dispense with a detailed description of the evidence adduced at trial.

Kenneth Ewing approached Lloyd Hicks at a gathering. After a brief exchange of words Hicks slapped Ewing across the face. Ewing left the scene, but returned a short time later with Steven Ewing and about ten other people. They blocked in the pick-up truck occupied by Hicks, who jumped into the back of the pick-up truck and picked up a tire jack. Hicks and Steven Ewing were arguing loudly. As Steven Ewing approached the truck and grabbed at Hicks, Hicks swung at Steven Ewing with the tire jack. Hicks slipped or fell, losing control of the jack. While standing on the ground, Kenneth Ewing picked up the jack and hit Hicks with the jack at least six times while Steven Ewing held Hicks. Hicks died as the result of a crushed head and lacerated spleen due to blunt trauma.

Ewing's first five points of error allege he received ineffective assistance of counsel in the guilt phase of his trial. The Court of Criminal Appeals has explained the standard of review for claims of ineffective assistance of counsel:

The proper standard for determining claims of ineffective assistance under the Sixth Amendment is the standard adopted by the United States Supreme Court in *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. We adopted the *Strickland* standard in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim.App.1986). In *Strickland*, the Supreme Court adopted a two-pronged analysis for claims of ineffective assistance. Under the first prong, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, the defendant must show that counsel's deficient performance prejudiced the defense. *Id.* To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability* sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Under the *Strickland* test, the defendant bears the burden of proving ineffective assistance. In addition, when reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. at 2065.

*Jackson v. State*, 877 S.W.2d 768, 770–71 (Tex.Crim.App.1994).

Ewing groups his first two points of error in a single argument. These points urge as follows:

Point of error one: Trial counsel rendered ineffective assistance in failing to object to the prosecutor's cross-examination of the defendant and jury argument linking implausibility of defendant's exculpatory story to seemingly inconsistent post arrest silence.

Point of error two: Trial counsel rendered ineffective assistance in failing to object to the prosecutor's closing argument which alluded to the appellant's post arrest silence.

Kenneth Ewing testified at trial that he attacked Lloyd Hicks because he feared for the safety of his brother Steven. On cross-examination, the prosecutor asked Ewing about comments Ewing made to officers on a tape which had been introduced earlier in the trial. On the tape, Kenneth Ewing can be heard telling the officers he had not done anything, that he had not been in town for a couple of weeks, and he was going to sue them because they had the wrong man. This is not post-arrest silence. The prosecutor asked Ewing if he told the officers he hit

Hicks out of fear for his life or his brother's life, and Ewing admitted he did not. In jury argument, the prosecutor referred to the exchange that can be heard on the tape as evidence of Ewing's state of mind.

The State cannot use the post-arrest silence of an accused against him at trial to impeach an explanation subsequently offered at trial. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91, 97–98 (1976); *accord Sanchez v. State,* 707 S.W.2d 575, 582 (Tex.Crim.App.1986)(plurality opinion). Use of post-arrest silence violates the rights of the accused under the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution. *Doyle,* 426 U.S. at 617–18, 96 S.Ct. at 2244–45, 49 L.Ed.2d at 97–98; *Sanchez,* 707 S.W.2d at 578. *Doyle* is inapplicable here because the prosecutor in our case was impeaching the appellant with his prior inconsistent statement, not his prior invocation of the right against self-incrimination. *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); *Montoya v. State,* 744 S.W.2d 15, 27–28 (Tex.Crim. App.1987), *overruled on other grounds, Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim. App.1996). A person under arrest is not expected to speak out, so the fact that he does not speak out when given the opportunity cannot be used to impeach his trial testimony. But when, as here, he does not invoke his right to remain silent but makes a statement to the police regarding his involvement in the offense, the fact that the story he gave the police differs in significant respects from his trial testimony may be developed and argued before the jury. We hold Ewing failed to demonstrate counsel's performance was deficient. Points of error one and two are overruled.

Ewing's next three points of error complain of defense counsel's performance in jury selection:

Point of error three: Trial counsel rendered ineffective assistance in failing to question prospective jurors.

Point of error four: Trial counsel rendered ineffective assistance in failing to strike prospective juror for cause and utilizing a preemptory [sic] strike.

Point of error five: Trial counsel rendered ineffective assistance due to the numerous failures during the voir dire and trial to the extent that appellant was denied a fair trial.

Ewing complains trial counsel did not challenge Jo Fulbright for cause after she admitted she was biased. The record reflects counsel did challenge her, but Fulbright referred to herself by the wrong juror number, so the trial court did not remove her for cause. The defense used a peremptory strike to remove her from the panel.

Ewing also complains that trial counsel did not question a venireperson, John Sandling, who admitted he had a family member charged with a crime. When asked if he felt the family member had been treated fairly, Sandling told the prosecutor he "didn't track it."

Finally, Ewing complains his trial attorney didn't individually question many of the venirepersons who ultimately served on the jury panel.

In *Knight v. State,* 839 S.W.2d 505 (Tex. App.—Beaumont 1992, no pet.), we reversed the appellant's conviction for ineffective assistance of counsel during jury selection, where the record reflected trial counsel failed to make any attempt to remove from the jury venirepersons who expressed patent bias against the presumption of innocence and the right to remain silent. With the exception of Ms. Fulbright, the people on Ewing's venire did not express a bias against the defense. Certainly, a person, such as Mr. Sandling, who had a family member charged with a crime would not be expected to possess a bias against the *defense* as a result of that exposure to the legal system, and he did state he had not kept track of the relative's case. We have no record, usually developed in a motion for new trial hearing or on writ of habeas corpus, in which trial counsel explains his thought processes and trial strategy. *See Jackson,* 877 S.W.2d at 771; *Delrio v. State,* 840 S.W.2d 443 (Tex.Crim.App. 1992). Ewing has not demonstrated deficient performance by counsel in the general jury selection process.

■ As for Ms. Fulbright, defense counsel did try to remove her for cause, but did not do so through what must have been a mistake. That venireperson was, however, removed from the panel through the exercise of a peremptory strike. We cannot identify an objectionable juror who should have been removed from the panel but was not because defense counsel used his last strike to exclude Fulbright. Thus, we cannot conclude counsel's failure to realize Fulbright had not been removed for cause and subsequent exercise of a peremptory strike against her prejudiced Ewing's defense. Points of error three through five are overruled.

■ Point of error six urges, "Trial counsel rendered ineffective assistance at the punishment phase of the trial by calling no witnesses other than the appellant and what testimony that was elicited was deficient."

■ When the alleged error of counsel deals with the punishment phase, we apply the standard set forth in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980); that is, we must determine whether counsel was reasonably likely to render effective assistance and whether counsel reasonably rendered effective assistance. *Ex parte Walker*, 794 S.W.2d 36, 37 (Tex.Crim.App.1990). The totality of the representation is considered, including that at the guilt-innocence stage of the trial. *Id.* at 37. A defendant's constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987).

■ Trial counsel called Ewing as a punishment phase witness, proved Ewing's probation eligibility, and had Ewing admit to a few misdemeanor convictions. On appeal, Ewing complains that trial counsel did not put on any friends or family to offer testimony in mitigation of punishment. Again, nothing in the record suggests who was available to testify or what the substance of that testimony might have been. Trial counsel's failure to call witnesses at the guilt/innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983); *Monreal v. State*, 923 S.W.2d 61, 72 (Tex.App.—San Antonio 1996), *aff'd on other grounds*, 947 S.W.2d 559 (Tex. Crim.App.1997); *Kizzee v. State*, 788 S.W.2d 413, 416–17 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). Point of error six is overruled.

Points of error seven through ten concern the testimony from Lloyd Hicks's roommate, Dan Clark, Jr., about an extraneous offense:

> Point of error seven: The trial court erred in admitting evidence of extraneous offenses in the rebuttal phase of the trial to impeach the appellant's credibility because the evidence had no specific relevance to credibility.

> Point of error eight: The trial court erred in admitting evidence of an extraneous offense to rebut a defensive theory.

> Point of error nine: The trial court erred in admitting evidence of extraneous offenses to prove intent.

> Point of error ten: The trial court erred in admitting evidence of extraneous offenses without proof the defendant participated therein.

During the trial, the defendants claimed they had never met Lloyd Hicks. Ewing claimed someone at a gathering pointed out Hicks to him, and he approached Hicks to tell him to leave his brother Joe alone. The State called Lloyd Hicks's roommate, Dan Clark, Jr., as a rebuttal witness. Clark testified that about two months before the offense, he heard honking in the front of their home and opened the door. Saying "Bubba Hicks, we are going to kill you," Kenneth and Steven Ewing confronted Clark. Although Clark told them he was not Bubba Hicks, they beat him up anyway.

■ First, Ewing argues Clark's testimony was inadmissible under Rules 602 and 608(b) of the Texas Rules of Criminal Evidence. The objection at trial was "to the relevance ... obviously it occurred sometime prior." We cannot say the trial court was apprised of an objection based upon lack of personal knowledge or specific instances of conduct. TEX.R.CRIM. EVID. 602, 608(b). The argument based on those rules presents

nothing for review. TEX.R.CRIM. EVID. 103(a)(1); TEX.R.APP. P. 33.1(a).

■ Ewing argues Clark's testimony was inadmissible under Rule 403 and the trial court erred in failing to perform the balancing test. A separate objection under Rule 403 is required to preserve error for review. *Bell v. State*, 938 S.W.2d 35, 49 (Tex.Crim. App.1996), *cert. denied*, ── U.S. ──, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997); *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex.Crim.App.1991)(opinion on rehearing). This was not done. The argument based on Rule 403 presents nothing for review. TEX. R.CRIM. EVID. 103(a)(1); TEX.R.APP. P. 33.1(a).

■ Clark's testimony was relevant to Ewing's intent, as Ewing concedes in his brief. TEX.R.CRIM. EVID. 404(b). Finally, although point of error ten complains the State failed to prove the extraneous offense beyond a reasonable doubt, he presents no argument in support of that point. Clark identified the two Ewings on trial as the persons who assaulted him, but on cross-examination wavered as to the "older" one, Steven. He (Clark) was, however, "pretty sure" about the "dark-headed one" and heard one of them say, "Come on, Steven. The police are coming. We need to go." Clark sufficiently identified the appellant in court for the jury to rationally find beyond a reasonable doubt Ewing committed the assault.

We hold the trial court did not err in admitting the testimony of Dan Clark, Jr. Points of error seven through ten are overruled.

■ The remaining points of error concern the trial court's failure to give extraneous offense instructions:

Point of error eleven: The trial court erred in instructing the jury that they could consider all the evidence presented on issue of guilt/innocence without cautioning that extraneous offense presented during guilt/innocence phase of trial should not be considered unless proven beyond a doubt.

Point of error twelve: The trial court erred in instructing the jury that they could consider all the evidence presented on issue of punishment without cautioning that extraneous offense presented during punishment phase of trial should not be considered unless proven beyond a doubt.

The extraneous offense in question is the assault discussed in points of error seven through ten. The State re-offered the guilt phase evidence in the punishment phase of the trial. Ewing did not request a jury instruction on extraneous offenses, nor did he object to the charge given to the jury in either phase of the trial.

■ If the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App.1994).

A *Geesa* instruction was included in the guilt phase charge, as were instructions on voluntary manslaughter, self-defense, defense of third persons, and provocation. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991). The evidence submitted on the extraneous offense is legally sufficient to support a finding Ewing committed the assault. The evidence he murdered Lloyd Hicks is overwhelming. Finally, the prosecutors never mentioned the extraneous offense in jury argument. We conclude Ewing received a fair and impartial trial and did not suffer egregious harm from the omission of a guilt phase jury charge instruction applying the reasonable doubt instruction to extraneous offenses.

■ During the punishment phase of a trial, the jury is the exclusive judge of the facts and should determine whether the State has proved extraneous offenses beyond a reasonable doubt and should be so instructed when requested. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996). The Court of Criminal Appeals has not reviewed an appeal where no request or objection was made regarding a punishment phase instruc-

tion on extraneous offenses.[2] The Courts of Appeals differ in their analysis of this issue. The Fort Worth Court of Appeals held the failure to object waived error. *Tow v. State*, 953 S.W.2d 546, 548 (Tex.App.—Fort Worth 1997, no pet.). The Austin Court of Appeals expressed no opinion on preservation of error, but found no egregious harm in a case where the appellant did not contest the sufficiency of the evidence admitted on the extraneous offense. *Smith v. State*, 899 S.W.2d 31, 35 (Tex.App.—Austin 1995, pet. ref'd)(applying *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985)(opinion on rehearing)). A later opinion by the Austin court declined to rule on error, then applied the egregious harm standard and affirmed in a case where the appellant testified in the punishment phase and denied committing the extraneous offense. *Cormier v. State*, 955 S.W.2d 161, 163–64 (Tex.App.—Austin 1997, no pet.). The Corpus Christi Court of Appeals applied the "egregious harm" standard and affirmed in a case where the extensive evidence of extraneous criminal behavior was largely uncontroverted. *Yates v. State*, 917 S.W.2d 915, 922 (Tex.App.—Corpus Christi 1996, pet. ref'd). The San Antonio Court of Appeals applied the harm analysis for error of a constitutional dimension and reversed on punishment in two appeals. *Fields v. State*, 966 S.W.2d 736, 741–42 (Tex.App.—San Antonio 1998, pet. filed); *Huizar v. State*, 966 S.W.2d 702, 708–10 (Tex.App.—San Antonio 1998, pet. filed).

■ Ewing relies on a case which holds the general reasonable doubt instruction is mandatory and failure to give the instruction is always reversible error. *Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996); *see also Geesa*, 820 S.W.2d 154. We note that *Geesa* error is not subject to an *Almanza* analysis because the general reasonable doubt instruction is an absolute systemic requirement. The instructions in question in this case concern an extraneous offense, not a matter upon which Ewing's liberty is at stake. We also note that *George* and *Mitchell* were both remanded for a determination

of whether the appellant suffered "some harm" under *Almanza*, and in both cases the trial court had denied an extraneous offense reasonable doubt instruction requested by the accused. We take this to be a rather clear indication our high court does not perceive *George* or *Mitchell* error to be error regarding a fundamental systemic requirement or error of constitutional dimension.

■ The State argues the requested instruction is a defensive issue the exclusion of which is not error at all, citing *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998). *Posey* involved the defense of mistake of fact. A defense is not applicable to a case unless the defendant requests the issue be submitted, or objects to the charge. Extraneous offenses, however, are applicable to a case whenever they are admitted into evidence, provided, of course, there is sufficient evidence from which to conclude beyond a reasonable doubt they were committed by the defendant. Although we would not be surprised if the Court of Criminal Appeals eventually applies the rule announced in *Posey* to the omission of extraneous offense instructions, the State has not presented a persuasive argument that we must do so.

■ We hold that, absent an objection to its inclusion in the punishment phase charge, the trial court should include an instruction on reasonable doubt when evidence of extraneous offenses is offered in punishment. Absent a request for an instruction or objection to submission of the punishment charge without such an instruction, the appellant must demonstrate on appeal that he did not receive a fair and impartial trial.

■ Charge error must be reviewed "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d at 171. In this case, the guilt phase charge included a *Geesa* instruction. The extrane-

---

2. It has held a defendant does not suffer egregious harm from the omission of a special verdict form on extraneous offenses in the punishment phase of the trial. *Cantu v. State*, 939 S.W.2d 627, 643 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997); *McFarland v. State*, 928 S.W.2d 482, 496 n. 6 (Tex.Crim.App.1996).

ous offense evidence was merely re-offered from the guilt phase; there was no additional testimony on the subject. The prosecutors did not mention the assault on Clark in their jury argument. The focus of the prosecutor's argument was on the brutal, cowardly manner in which Ewing ended Bubba Hicks's life. Ewing failed to show he was denied a fair trial. We overrule points of error eleven and twelve. The judgment and sentence of the trial court are affirmed.

AFFIRMED.