# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00165-CR

**Augustine Gutierrez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND DISTRICT COURT
## NO. CR98-166, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

Appellant Augustine Gutierrez appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 1994). The jury found appellant guilty and assessed his punishment at three years' imprisonment.

### Points of Error

Appellant advances six points of error, all of which relate to evidentiary rulings. In the first two points, appellant contends that the trial court erred in permitting the State to prove an extraneous offense through witnesses Bryan Hugghins and Wayne Lehman. In the next two points, appellant claims violation of his federal and state constitutional rights when the State was allowed to impeach him with his post-arrest silence. The fifth point also complains about appellant's cross-examination when the State was able to impeach him with the details of his prior convictions at the

guilt/innocence stage of the trial. Lastly, appellant urges there was "cumulative error" depriving him of a fair trial.

**Facts**

Appellant does not challenge the sufficiency of the evidence to support the conviction. A brief recitation of the basic facts will place the points of error in proper perspective.

Robert Hospers, the complainant, testified that on the evening of April 9, 1998, he had dinner with Phillip and Linda Couch, who were friends of his. After dinner, they decided to go to the Sundowner Bar. When he entered the bar, Hospers spoke to a woman that he had seen "around." He "really did not know her" and had no relationship with her. Hospers did not know appellant or that the woman was his wife.

As Hospers turned to order drinks from the bar, appellant, without speaking, pushed him and threatened him with a knife. Hospers was cut on the chest and the neck. Other individuals pulled appellant away. Appellant and the woman then left the bar.

Phillip Couch saw Hospers speak to a young woman upon entering the bar. Shortly thereafter, he heard a disturbance and saw appellant leave the scene. When Couch realized that Hospers had been cut, he moved to assist Hospers. Linda Couch saw some "pushing" but could not identify anyone from her location in the bar.

Richard Sarsfield, who was playing pool at the bar, saw appellant and Hospers pushing each other and observed that appellant had a knife at Hospers's neck. Sarsfield had heard no words or argument between these individuals. Someone named "Dwight" grabbed appellant, pulled him aside and ordered him to leave. Appellant left with an intoxicated woman, later identified as appellant's wife. The police were called.

2

Other customer-witnesses gave accounts similar to Sarsfield's. Dwight Griffin, another customer, saw Hospers talking to a female customer. Later, he heard a disturbance and saw the pushing between Hospers and appellant. Griffin grabbed appellant and pushed him to the door. Griffin did not learn until later that Hospers had been cut with a knife.

The testimony of deputy sheriffs Bryan Hugghins[1] and Wayne Lehman, who were originally dispatched to the Sundowner Bar, is set out in our discussion of appellant's points of error and need not be stated here. At appellant's home, Hugghins found the knife used in the assault. Ruby Rubio, a district attorney's investigator, testified that the knife was capable of inflicting death or serious bodily injury.

Appellant advanced the theory of self-defense. Angela Gutierrez testified that she was to meet appellant, her husband, at the Sundowner Bar about 10:00 p.m. after he finished his work that day. Angela Gutierrez went to the bar early and was intoxicated when appellant arrived. She related that Hospers came by, grabbed her leg, and invoked a challenge from appellant not to bother her. She indicated that Hospers pushed appellant and swung a glass at him. At this time, she and appellant were grabbed by others and she fell to the floor. Appellant pulled a knife to defend both of them. They then left the bar and went home. Upon arrival, Angela related that she "tore up" the house because of her intoxicated state. Appellant's testimony tracked that of his wife. He stated that he acted in self-defense and did not intend to injure Hospers.

---

[1] "Hugghins" is the spelling of the witness's name in the court reporter's record.

### Proof of an Extraneous Offense
### Hugghins's Testimony

In point of error one, appellant asserts that the trial court erred in allowing the State to prove "an alleged extraneous offense of assault against the appellant's wife through witness Hugghins." He contends that the evidence "was irrelevant and immaterial to the charges on trial" and admitted "over the objections of appellant's counsel."

Comal County Deputy Sheriff Bryan Keith Hugghins testified that on April 9, 1998, between 11:30 p.m. and 12:00 midnight, the officers received a report of a stabbing at the Sundowner Bar. While enroute there, Hugghins received another dispatch reporting a disturbance at 1010 Inspiring View, Hancock Oak Hills. Still another report indicated that the suspect in the stabbing had left the bar in a small white pick-up truck. One of the officers reported to Hugghins that a resident at the address of the disturbance had a vehicle of the description given.

Deputy Hugghins and another officer went to the Inspiring View address. Upon arrival, Hugghins heard a female screaming, who then yelled, "just leave me alone." Feeling that an assault "might be in progress," Hugghins and Deputy Leyba entered the residence through an unlocked front door and followed the sound of the screaming to a bedroom where a woman was lying on the floor, partially under a table. Appellant was seated on a bed above her.

At this point, appellant's counsel took the witness on voir dire examination and established that Hugghins had not seen an assault, had not filed assault charges, and did not know of anyone who had done so. For the first time, appellant's trial counsel objected by asking the trial court not to allow "any *further* testimony in regards to anything at the residence as it is not relevant to what happened at the Sundowner Bar which my client's accused of. He's not accused of any sort of

4

assault at the house nor was there any charges of that brought." (Emphasis added.) The objection was overruled.

Hugghins then identified the woman at the scene as appellant's girlfriend; revealed that he talked to appellant outside the house about the "problem" there while appellant was not under arrest; that appellant informed him appellant and his girlfriend got into an argument after he brought her home from the Sundowner Bar; and that she tore up the property at the house. Hugghins observed that the house was in "total disarray." When asked what he meant by that, appellant's counsel objected that "the condition of the house" was "irrelevant" to the offense charged. Following the prosecutor's response, appellant's counsel offered to stipulate that the house was "trashed out." The objection was overruled. The foregoing objections are the only ones called to our attention. Throughout the record the same or similar testimony concerning the matters in question was admitted without objection.

A specific objection must be made each time an offer of inadmissible evidence is made in order to preserve any error for review. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd). The improper admission of evidence is not reversible error when the same facts are proven by other unobjected-to testimony. *Anderson v. State*, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); *Miranda*, 813 S.W.2d at 739. Any exception to such holdings is not applicable here. *See Beheler v. State*, 3 S.W.3d 182, 187 (Tex. App.—Fort Worth 1999, pet. ref'd) (noting exceptions). Most importantly, we find no proof through Hugghins's testimony that appellant assaulted his girlfriend or wife. The first point of error is overruled.

## Lehman's Testimony

In his second point of error, appellant advances the same contention as in the first point of error, except this time he complains of the testimony of the witness Wayne Lehman. Here again, appellant contends that the evidence of appellant's assault upon his wife was "irrelevant and immaterial."

Appellant refers us generally to twenty-two pages of the court reporter's record. He fails to point out and we have not found where Lehman testified as to any assault upon appellant's wife or girlfriend over the objection of "irrelevant and immaterial." Nothing is presented for review. *See* Tex. R. App. P. 38.1(h).

Deputy Sheriff Wayne Lehman testified that on the night in question he first went to the Sundowner Bar where he made a videotape of the scene. Next, he went to the residence on Inspiring View. When asked what he found at that location, Lehman responded that "there was trash all over the place." Appellant's counsel stated that "Instead of me objecting each time they go into the condition of the house and all these events after the fact, I'd like to have a standing objection with the Court just that we object to all that testimony." The trial court permitted a running objection. It is upon this running objection that appellant predicates his error.

> A "running objection" must, of course, meet the general requirements of a request for relief. That is, it must be specific and timely and must state with adequate precision the relief requested and the reasons why the party regards himself entitled to that relief.

42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure* § 42.31, at 56 (Texas Practice 1995) (hereinafter Dix).

Even if granted by the trial court, a running objection may not "encompass too broad a reach of subject matter over too broad a time or over different witnesses." *Sattiewhite v. State*, 786 S.W.2d 271, 283-84 n.4 (Tex. Crim. App. 1989). Whether a running objection will be effective requires scrutiny of the facts of each case. Dix, § 42.31, at 56. "Even during the testimony of the same witness, a running objection may be ineffective with regard to testimony concerning subjects other than that being addressed when the objection was made and granted." *Id*. at 57; *see also White v. State*, 784 S.W.2d 453, 458-61 (Tex. App.—Tyler 1989, pet. ref'd).

The instant running objection stated no basis nor gave any reason why appellant was entitled to the relief requested. Moreover, it was addressed to "the condition of the house" and generally to all the events "after the fact." If the objection was addressed to an extraneous offense of assault upon his wife by appellant upon the basis of relevancy, this was not made clear by the objection. Appellant's second point of error is overruled.

### Post-Arrest Silence

In points of error three and four, appellant claims violations of his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and under article I, section 10 of the Texas Constitution. He contends that the trial court erred in allowing the State to impeach him on cross-examination with evidence of his silence after his arrest by peace officers. Appellant cites *Doyle v. Ohio*, 426 U.S. 610, 618 (1976), to support his federal constitutional claim and *Sanchez v. State*, 707 S.W.2d 575, 577 (Tex. Crim. App. 1986), to support his state constitutional claim.

Appellant testified in his own behalf. On direct examination, he related that he went to the Sundowner Bar to meet his wife on the night in question; that his wife was drunk but wanted

to finish her hamburger; that a large man [complainant] came by and grabbed his wife by the leg and "was all over her"; that the complainant was told that appellant did not appreciate the complainant's conduct; and that as he (appellant) and his wife stood up to leave, he was pushed, hit with a glass, and was hit and grabbed from behind. Appellant stated that his wife was intoxicated and was on the floor and people were stepping on her. Under the circumstances, appellant related that to defend himself and his wife, he pulled a knife, and in the process, cut the complainant without intentionally trying to cut the man.

The record reflects that after appellant had been taken into custody and twice given the *Miranda*[2] warnings, appellant voluntarily talked to Deputy Lehman while Lehman videotaped his remarks. On cross-examination, the prosecutor finally got appellant to admit that in telling Lehman what happened that night, he (appellant) did not tell Lehman that he (appellant) had been attacked and had acted in self-defense and in defense of his wife. After further interrogation on the matter, appellant's counsel objected to the "line of questioning" as being in violation of appellant's post-arrest rights to remain silent after being Mirandized. The objection was overruled. Thereafter, appellant confirmed that he had not told the officer the story about being attacked.

It is true that the State cannot use the post-arrest silence of an accused against him at trial to impeach an explanation subsequently offered at trial. *Doyle*, 426 U.S. at 618; *accord Sanchez*, 707 S.W.2d at 582.

> A person under arrest is not expected to speak out, so the fact that he does not speak out when given the opportunity cannot be used to impeach his trial testimony. But when, as here, he does not invoke his right to remain silent but makes a statement to the police regarding his involvement in the offense, the fact that the story he gave the

---

[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

8

> police differs in significant respects from his trial testimony may be developed and argued before the jury.

*Ewing v. State*, 971 S.W.2d 204, 208 (Tex. App.—Beaumont 1998, pet. ref'd); *see also Anderson v. Charles*, 447 U.S. 404, 409 (1980) (noting that *Doyle* not applicable where prosecutor impeaches accused with his prior inconsistent statement, not his prior invocation of the right against self-incrimination).

In the instant case, appellant was not being questioned about his post-arrest silence, but rather was being interrogated about his voluntary post-arrest statements after being Mirandized. *See Reyna v. State*, 11 S.W.3d 401, 404 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd. untimely filed). The State was entitled to question appellant about any potential conflict in his voluntary post-arrest statements. *Id.*; *Ewing*, 971 S.W.2d at 208; *Mendoza v. State*, 840 S.W.2d 697, 700 (Tex. App.—Corpus Christi 1992, no pet.). Thus, in order to impeach appellant, the State was properly permitted to question him about what he had omitted from his prior statements. *Montoya v. State*, 744 S.W.2d 15, 28 (Tex. Crim. App. 1987).

Moreover, as the State observes, a defendant must make a timely objection at trial in order to preserve the complaint on appeal. Tex. R. App. P. 33.1(a)(1); *Banda v. State*, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994). The failure to do so forfeits any right to complain of the trial court's action on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Even constitutional error may be waived by the failure to timely object. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). In the instant case, appellant's objection was not timely. The third and fourth points of error are overruled.

**Details of Prior Convictions**

In the fifth point of error, appellant contends that the trial court erred in allowing the State to impeach him on cross-examination with evidence of the "details" of his prior convictions which were inadmissible during the guilt/innocence phase of the trial.

Once a criminal defendant takes the witness stand, he is subject to the same rules as any other witness and may be cross-examined, impeached, contradicted, made to give evidence against himself, and treated in every respect as any other witness except where there are overruling constitutional or statutory provisions. *Sanchez*, 707 S.W.2d at 577; *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.).

Under Rule 609(a) of the Texas Rules of Evidence, a witness may be impeached as to his criminal history if the conviction is for a felony or a crime of moral turpitude. *Lopez*, 990 S.W.2d at 777. An exception to the limitations in Rule 609(a) exists when the witness by his direct testimony leaves a false impression of any trouble he has had with the police. *Muse v. State*, 815 S.W.2d 769, 773 (Tex. App.—Waco 1991, no pet.).

In the instant case, on direct examination appellant acknowledged two prior convictions for a terroristic threat and for unlawfully carrying a weapon. This was an apparent attempt to get this evidence before the jury prior to its use by the State to impeach. Appellant, however, did not limit himself to presenting the historical facts of the convictions, which would have also limited the State. Appellant developed the "details" of both convictions. He testified about a broken relationship, that the young lady "was extremely upset," and "called in a bogus threat on me." Appellant denied that he held a piece of glass to the complainant's neck. He reported that he pled guilty to making a terroristic threat and accepted probation to avoid a trial like he "was going through

now." As to the other conviction, appellant stated that he lived and worked in bad neighborhoods in Dallas; that he obtained the gun for protection; and that the gun was not a large weapon and was not loaded.

On cross-examination, appellant acknowledged the record evidence of both convictions on October 22, 1998, which reflected offenses in April and June 1997. The prosecutor inquired into details of the terroristic threat offense and continued when the defense objection was overruled. Appellant denied all the inquired-about details, but admitted he pled guilty to the offense charging him with threatening to kill the complainant with a piece of glass. As to the details of the unlawfully carrying a weapon offense, appellant admitted that the weapon, a .380 caliber semiautomatic pistol, possibly had a bullet in the chamber when the police found it on the floorboard of the car.

"When the accused leaves a false impression during direct examination, he is commonly said to have 'opened the door' to an inquiry by the State as to the veracity of his testimony." *Turner v. State*, 4 S.W.3d 74, 79 (Tex. App. —Waco 1999, no pet.). When on direct examination, appellant went into the details of his prior convictions leaving the impression that he was not guilty of one conviction and that the other involved a small unloaded weapon obtained only for protection, he opened the door for the State to make further inquiry into the details of the prior convictions. *See Turner*, 4 S.W.3d at 79. Appellant's fifth point of error is overruled.

## Cumulative Error

In his last point of error, appellant urges "cumulative error" deprived him of a fair trial. Appellant calls our attention to the previous points of error and cites *Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999). In *Chamberlain*, the court wrote:

11

> It is conceivable that a number of errors may be found harmful in their cumulative effect. *See, e.g., Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988) (holding harm lies in the cumulative effect of the outburst and the improper arguments). But we are aware of no authority holding that non-errors may in their cumulative effect cause error.

*Id.* at 238.

The instant case is easily distinguishable from *Stahl*. Cumulative error has not been shown here. *See Wright v. State*, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000). The sixth point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion[*]

Affirmed

Filed: March 29, 2001

Do Not Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).