Affirmed and Opinion filed May 2, 2002









Affirmed
and Opinion filed May 2, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NOS.
14-01-00426-CR and 14-01-00427-CR

____________

 

ANGELA ROCKA, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 338th District Court

Harris County, Texas

Trial
Court Cause Nos. 867,827 and 867,828

 



 

O
P I N I O N








Appellant, Angela Rocka, was charged by indictment in cause
number 867,827 with the offense of aggravated sexual assault.  She was separately indicted in cause number
867,828 for the offense of aggravated robbery. 
Appellant was convicted by a jury of both offenses and sentenced to
sixty years= imprisonment in each cause of
action.  On appeal, appellant contends:
(1) the evidence was factually insufficient to support her convictions; (2) the
trial court erred in refusing to admit the complainant=s pretrial statement in its entirety;
(3) the trial court erred in admitting evidence of a substantially dissimilar
extraneous bad act; and (4) the trial court erred in admitting evidence of her
post-arrest silence.  We affirm.

Factual Background

On
the night of May 28, 2000, the complainant, a twenty-one year old student who
lived alone, responded to a knock on her apartment door.  When she opened the door, the complainant
discovered appellant, another female resident of the same apartment complex,
was seeking to use her telephone.  The
complainant consented and allowed appellant to enter her apartment.  Moments later, as the complainant was
escorting appellant to the study, she was startled by the sound of her front
door being opened again.  The complainant
turned and saw appellant=s co-defendant, Harold Umanzor, entering the apartment with a
handgun.  Umanzor then announced to the
complainant, ASurprise.@  Umanzor proceeded, with
the aid of appellant, to choke, restrain, bind, blindfold, and gag the
complainant.

Umanzor
and appellant then took turns sexually assaulting the victim throughout the
night by inserting objects into both her anus and vagina.  Thereafter, appellant beat the complainant
about the head and face with a clothes iron, retrieved a telephone cord so that
Umanzor might strangle her, and, when a question arose as to whether the complainant
was still alive, twice jumped on her neck. 
The bound and seemingly lifeless victim was then placed in a
closet.  After her assailants had
departed, the complainant managed to attract the attention of a neighbor by
banging and kicking on an adjoining wall. 
Subsequent investigation by authorities revealed that, in addition to
brutalizing the complainant, Umanzor and appellant had stolen approximately
$1,750 in cash and a gold sapphire necklace.








Officers
of the Harris County Sheriff=s Department suspected appellant and Umanzor and included their
likenesses in a photospread.  The
complainant, however, was unable to distinguish them, as she had suffered
hemorrhaging in her eyes as a result of the assault.  Nonetheless, the complainant was able to
offer a written statement regarding the crimes.

Appellant
was arrested on May 31, 2000, for outstanding traffic warrants.  After being given the statutory warnings, she
gave a written statement in which she confessed to going to the victim=s
apartment with a man named AH@ to use the telephone, that AH@ hit the complainant and dragged her into the bedroom, that
appellant believed AH@ was going to rape the complainant, and that appellant then
returned to her own apartment and locked the door.  Thereafter, Umanzor offered his own
self-serving written statement. Umanzor confessed that appellant let him into
the victim=s apartment, told him to choke the complainant, bashed her
skull four or five times with a clothes iron, took approximately $70 from the
complainant=s purse, jumped on the complainant=s
neck in an apparent attempt to break it, and told him to put the complainant in
the closet.  Neither statement, however,
mentioned the use or exhibition of a firearm.

Factual
Sufficiency

Appellant
first contends the State=s evidence was factually insufficient for the jury to conclude
that she committed aggravated sexual assault and aggravated robbery.  Specifically, appellant complains that, while
a robbery admittedly occurred, there was factually insufficient evidence (1)
the victim was sexually assaulted, and (2) that appellant or her companion wielded
a firearm so as to aggravate the offenses. 
We disagree.








When conducting a factual sufficiency review, we consider all
the evidence without regard to whether it favored the verdict.  Under such a review, we set aside the verdict
Aonly
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.@  Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  To do this, A[t]he court reviews the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compares it with
the evidence that tends to disprove that fact.@  Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
Since the State bears the burden of proving each element of a criminal
offense at trial, an appellant may challenge the sufficiency of the evidence
used to establish an element of the offense by claiming that evidence
supporting the adverse finding is Aso weak as to be factually insufficient.@  Id. at 11.  We are mindful, however, that we must give
appropriate, but not absolute, deference to the judgment of the fact finder so
as not to supplant the fact finder=s function as the exclusive judge of the weight and credibility
given to witness testimony.  Id.
at 7.

Here,
appellant committed the offense of sexual assault if she intentionally or
knowingly caused the penetration of the anus or female sexual organ of the
complainant by any means, without her consent. 
Tex. Pen. Code Ann. '
22.021(a)(1)(A) (Vernon Supp. 2002).  The
offense was aggravated, as was the offense of robbery,[1]
if appellant used or exhibited a deadly weapon during its commission.  Id. ' 22.021(a)(2)(A)(iv), ' 29.03(a)(2). 
Furthermore, as the jury was instructed on the law of parties, appellant
was criminally responsible for Umanzor=s conduct if, Aacting with intent to promote or assist the commission of the
offense,@
she solicited, encouraged, directed, aided, or attempted to aid him in the
commission of these offenses.  Id.
'
7.02(a)(2).  Appellant admits that she
brutally attacked and robbed the complainant with the aid of Umanzor, but avers
the evidence was insufficient to show that either she or Umanzor penetrated the
victim=s
anus or sexual organ, and that the State presented Anegative
evidence (less than no evidence)@ either of them used or exhibited a firearm.








Appellant=s
challenge to the sufficiency of the evidence regarding the sexual assault rests
upon: the absence of any reference to such an assault in either her own
statement or that made by Umanzor; inconsistencies between a post-assault
statement made by the complainant and her testimony at trial as to whether Umanzor
inserted his penis into her vagina and ejaculated; and an assertion that
irritation of the complainant=s buttocks and genitalia was caused not by a sexual assault,
but by lying in her own urine and feces for several hours before she could
summon assistance.  Appellant ignores,
however, extensive testimony from the victim concerning appellant=s
conduct throughout the attack.  The
complainant testified that, in addition to Umanzor=s
brutal assault, appellant inserted her fingers into her anus and vagina.  Moreover, the complainant explained any
inconsistencies between her written statement and testimony at trial concerning
Umanzor=s
conduct by noting that the statement was made with the aid of her mother while
she was still suffering the effects of the vicious beating and was taking a
variety of medications.  Finally,
testimony was elicited that the complainant=s genitalia and buttocks were extremely swollen and abraded,
and that her injuries were consistent with having been sexually assaulted.

As
to the use of a firearm, the complainant testified that Umanzor entered the
apartment carrying a handgun.  She also
testified that while she was being sexually assaulted by Umanzor, appellant
assisted him by holding the gun to the complainant=s
head.

Accordingly,
the evidence is not so weak as to render the verdict clearly wrong and
manifestly unjust or against the great weight and preponderance of the
evidence.  See Johnson, 23 S.W.3d
at 11.  Appellant=s
contention that the evidence was factually insufficient to support her
convictions is overruled.

The
Rule of Optional Completeness

Appellant
next contends the trial court erred in refusing to admit the entirety of the
complainant=s pretrial written statement into evidence.  Specifically, appellant contends the rule of
optional completeness required admission of the statement in its totality to
permit the jury to gain a complete picture of the complainant=s
conflicting versions of whether Umanzor ejaculated inside her.








We
apply an abuse of discretion standard when reviewing a trial court=s
decision to admit or exclude evidence.  Schielack
v. State, 992 S.W.2d 639, 641 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  We will not intercede unless the trial court=s
decision was outside the Azone of reasonable disagreement.@  Id.

Under
the rule of optional completeness, A[w]hen part of an act, declaration, conversation, writing or
recorded statement is given in evidence by one party, the whole on the same
subject may be inquired into by the other, and any other act,
declaration, writing or recorded statement which is necessary to make it fully
understood or to explain the same may also be given in evidence, as when a
letter is read, all letters on the same subject between the same parties may be
given.@  Tex.
R. Evid. 107 (emphasis added). 
The rule is based on two considerations: (1) the danger that material
may be made misleading by being taken out of context, and (2) the inadequacy of
delayed repair.  See Jones v. Colley,
820 S.W.2d 863, 867 (Tex. App.CTexarkana 1991, writ denied) (citing Wellborn, Article I of
the Texas Rules of Evidence and Articles I and XI of the Texas Rules of
Criminal Evidence: Applicability of the Rules, Procedural Matters, and
Preserving Error, 18 St. Mary=s
L.J. 1165, 1194B95 (1987)).

Here,
the State elicited an explanation from the complainant regarding an
inconsistency between an earlier written statement and her testimony at trial
concerning whether Umanzor ejaculated inside her.  Thereafter, the trial court, although twice
refusing appellant permission to admit the statement itself into evidence, gave
her ample leave to inquire further of the complainant regarding the
discrepancy.








Accordingly,
we find that if the exclusion of the statement was error, the error was
harmless because there was no Apossibility of the fact finder receiving a false impression
from hearing the evidence of only a part@ of the complainant=s statement. Gilmore v. State, 744 S.W.2d
630, 631 (Tex. App.CDallas
1987, pet. ref=d) (explaining the purpose of the rule).  It is well established that complaints
regarding erroneous evidentiary rulings are not constitutional and, therefore,
are reviewed under the substantial rights standard set out in Rule 44.2(b) of
the Texas Rules of Appellate Procedure.  King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Moreover, a substantial right is affected
only when the error had a substantial and injurious effect or influence in
determining the jury=s verdict.  King,
953 S.W.2d at 271 (citing Kotteakos v. United States, 328 U.S. 750, 776
(1946)).  A criminal conviction will not
be reversed for non-constitutional error if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Appellant=s
contention is overruled.

Admission
of an Extraneous Bad Act

Appellant
further contends the trial court erred in admitting evidence of a substantially dissimilar
extraneous bad act.  Specifically, appellant complains that
evidence she failed to repay $20 borrowed one month before the attack from
Jimmy Ray, a neighbor, was so dissimilar from the charged offense as to be
inadmissible.

Evidence
of other crimes, wrongs, or acts is admissible only if (1) it is relevant apart
from its tendency to show character conformity, and (2) it is probative of some
Aelemental
fact or an evidentiary fact of some consequence to determination of the action.@  Heiman v. State, 923 S.W.2d 622, 625
(Tex. App.CHouston [1st Dist.] 1995, pet. ref=d)
(quoting Vernon v. State, 841 S.W.2d 407, 411 (Tex. Crim. App.
1992)).  If the trial court determines
the evidence has no relevance apart from supporting the conclusion that the
defendant acted in conformity with his character, it is absolutely
inadmissible.  Montgomery v. State,
810 S.W.2d 372, 387 (Tex. Crim. App. 1990). 
On the other hand, when the evidence tends to prove motive, opportunity,
intent, preparation, plan, knowledge, identity or absence of mistake or
accident, extraneous offenses may be admissible.  Tex.
R. Evid. 404(b); Yzaguirre v. State, 957 S.W.2d 38, 40 (Tex.
Crim. App. 1997). 








While
motive is not an essential element of a criminal offense, the State may always
offer evidence of motive because it is relevant as a circumstance tending to
prove the commission of an offense.  Gosch
v. State, 829 S.W.2d 775, 783 (Tex. Crim. App. 1991);  Bush v. State , 28 S.W.2d 441, 444 (Tex.
Crim. App. 1982); Rodriguez v. State, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972).  Evidence offered
as proof of motive must, of course, Afairly tend to raise an inference in favor of the existence of
a motive on the part of the accused to commit the alleged offense.@  Id. 
Thus, when offered to establish motive, the State is required only to
show the logical relevance of the extraneous offense in establishing a motive,
not  to demonstrate a similarity between
the primary offense and the extraneous offense. 
See Knox v. State, 934 S.W.2d 678, 682‑83 (Tex. Crim. App.
1996) (holding evidence of defendant=s prior drug use was relevant to show his motive for robbing a
pharmacy); Porter v. State, 623 S.W.2d 374, 386 (Tex. Crim. App. 1981)
(holding evidence that defendant had committed a robbery eleven days earlier
was relevant to show his motive).

The
evidence offered here merely demonstrated that appellant was short of funds
and,  thus, may have had a motive for
robbing the complainant.  Specifically,
the State showed that appellant had borrowed money from a neighbor which she
had been unable to repay.  We note that
appellant does not identify any harm resulting to her from the admission of Mr.
Ray=s
brief testimony.  Because the extraneous
act did not constitute a criminal offense, show the commission of a bad act, or
even the presence of a moral defect, its admission into evidence, even if
error, was harmless.  Reviewing the
record as a whole, we find the testimony did not influence or had only a very
slight influence on the finding of guilt. 
Accordingly, appellant=s contention is overruled.

Post-Arrest
Silence

Finally,
appellant contends the trial court erred in admitting evidence of her
post-arrest silence, in violation of her constitutional rights.








Appellant=s
objection concerns the following colloquy, which occurred during the State=s
cross-examination of the appellant about discrepancies between her written
statement and her testimony at trial:

Q.
       So, what happened between then and
now, the time you made this statement and now that makes you feel like you are
now cleansing your soul and purging yourself and telling us the honest to God
truth that we ought to believe everything you are saying?

A.        Between then and now, for one, I=ve
found God and I=m sober.  I can think straight and I do know that I=m
C I=m
woman enough to admit what I have done, but I will not admit to what I haven=t
done.

Q.        Where did you find God, Ms. Rocka?

A.        I knew him all along.  He was always there.  I just ignored him.

Q.        So, all along you were never woman
enough to admit what you did at any point in time until finally now,
right?  This is the first time you feel
like you=ve been woman
enough, you=re sober and
you finally admitted what happened?

A.        No, I admit this, what had happened a
month C I was in jail
and I have stuck to my same story since.

Q.        Did you ever tell your attorney, hey,
why don=t you contact
the police and tell them to come back over here because I want to tell them
what really happened?

[DEFENSE
COUNSEL]:  Your Honor, that is an
improper question.  Counsel obviously
knows she had been charged at that point in time.  That is not a responsible question.

THE
COURT:  Objection overruled.

Q.        Did you ever do that?

A.        I didn=t
realize that they were still in the picture. 
Are you talking about the detectives?

Q.        Sure. Or anybody.  Or the prosecutors.  Anybody.

A.        I figured all I
needed to do was tell my lawyer.








The State
cannot use the post-arrest silence of an accused against her at trial to impeach
an explanation subsequently offered at trial. 
Doyle v. Ohio, 426 U.S. 610, 618 (1976); accord Sanchez v.
State, 707 S.W.2d 575, 580 (Tex. Crim. App. 1986).  If a defendant chooses to speak to police,
however, she cannot later alter or modify her statement with impunity. 

A person under
arrest is not expected to speak out, so the fact that [s]he does not speak out
when given the opportunity cannot be used to impeach h[er] trial
testimony.  But when, as here, [s]he does
not invoke h[er] right to remain silent but makes a statement to the police
regarding h[er] involvement in the offense, the fact that the story [s]he gave
the police differs in significant respects from h[er] trial testimony may be
developed and argued before the jury.

Ewing v.
State, 971 S.W.2d
204, 208 (Tex. App.CBeaumont 1998, pet. ref=d); see also Anderson v. Charles, 447 U.S. 404, 409
(1980) (noting that Doyle is inapplicable where a prosecutor impeaches
an accused with his prior inconsistent statement, not his prior invocation of
the right against self-incrimination). 
Thus, the State may properly question a witness regarding deviations
from a prior statement.  Montoya v.
State, 744 S.W.2d 15, 28 (Tex.
Crim. App. 1987), overruled on
other grounds, Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).








While
appellant was not solely questioned about her voluntary post-arrest statement,
but rather was also interrogated about her failure to correct errors in that
statement, we see no material distinction. 
Considering the fact that appellant freely and voluntarily spoke with
police officers after being arrested and given her Miranda warnings, she could
reasonably have been expected to inform the officers that the statements she
made to them were not true in some respects. 
See Montoya, 744 S.W.2d at 27 (quoting Cisneros
v. State, 692 S.W.2d 78, 83 (Tex.
Crim. App. 1985), for the proposition
that  A>the
prior silence of a witness as to a fact to which [s]he has testified, where
such silence occurred under circumstances in which [s]he would be expected to
speak out, may be used to impeach the witness on cross-examination=@).  Questioning appellant
about omissions in her voluntary statement was not an impermissible violation
of her right to remain silent because she did not remain silent regarding the
subject matter of her statement.  See
id.  Accordingly, appellant=s
final point of error is overruled.

The
judgment of the trial court is affirmed.

 

 

 

 

/s/        J.
Harvey Hudson

Justice

 

 

 

 

Judgment rendered and Opinion filed May 2,
2002.

Panel consists of Justices Hudson, Fowler,
and Edelman.

Do Not Publish C
Tex. R. App. P. 47.3(b).











[1]  The relevant
portion of the Texas Penal Code provides that a person commits the offense of
robbery if, in the course of committing theft and with intent to obtain or
maintain control of the property she Aintentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death.@  Tex. Pen. Code Ann. ' 29.02(a)(2) (Vernon Supp. 2002).