COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                       NOS.
2-07-034-CR

                                               2-07-035-CR

                                               2-07-036-CR

 

 

ROBERT DREW STEPHENSON                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Robert Drew
Stephenson appeals his convictions for retaliation, aggravated kidnapping, and
aggravated assault.  We affirm.

Introduction








Appellant=s ex-girlfriend, Lisa Cleveland, claimed that appellant abducted her
on March 5, 2006, and confined her until she escaped on March 24, 2006.  During the course of the abduction, appellant
burned Cleveland on the back with a torch and locked her in his grandmother=s old trunk.  Although the pair
left appellant=s house on
several occasions, Cleveland did not seek help or escape because of appellant=s threats.  

Following a three-day trial,
a jury convicted appellant of retaliation, aggravated kidnapping, and
aggravated assault, and it set punishment at ten years=, life, and twenty years= imprisonment, respectively. 
The trial court sentenced appellant in accordance with the jury=s verdict and ordered the sentences to run concurrently.  

Motion to Withdraw








In his first issue, appellant
contends that the trial court erred by denying his trial counsel=s motion to withdraw and refusing to appoint different counsel.      The
right to counsel afforded an indigent defendant by the Sixth Amendment may not
be manipulated to obstruct the orderly procedure in the courts or to interfere
with the fair administration of justice.[2]  A defendant does not have the right to his
own choice of appointed counsel, but there are circumstances in which a
defendant may be entitled to a change of counsel.[3]  A defendant must bring the matter to the
trial court=s attention
and must carry the burden of proving he is entitled to new counsel.[4]  We review a trial court=s denial of an attorney=s motion to withdraw for an abuse of discretion, assessing the ruling
in light of the information before the trial court at the time.[5]

When a possible conflict of
interest is brought to the trial court=s attention, the court must take adequate steps to ascertain whether
the risk of the conflict is too remote to warrant remedial action.[6]  A conclusory allegation of a conflict of
interest, however, has been held to be insufficient to carry the defendant=s burden.[7]  








Appellant=s trial counsel filed a motion to withdraw on December 11, 2006,
citing a conflict of interest with appellant.[8]  The trial court heard the motion on January
8, 2007, three weeks before trial.  At
the brief hearing, trial counsel stated only,

In each of these file numbers, I have heretofore
filed a motion to withdraw stating that a conflict of interest has arisen
between myself and [appellant].

 

I would state for the record that I am
constrained in what I can explain to the Court about this.  There are certain mandates placed on me as a
private attorney which restrict the amount of information which I can provide
the Court at this time.  I would just ask
the Court to understand that I seriously believe there is a conflict of
interest and I do not see how I can continue to represent [appellant].[9]  

 








The trial court denied the motion without inquiry
or explanation.  

Here, trial counsel did not
elaborate on the alleged conflict of interest.[10]  Under the facts of this case, therefore, we
hold that the trial court did not abuse its discretion by summarily denying
trial counsel=s motion to
withdraw.[11]  We overrule appellant=s first issue.

Double Jeopardy

In his third and fourth
issues, appellant argues that his Fifth Amendment protection against double
jeopardy was violated because his aggravated assault conviction is a lesser
included offense of both his aggravated kidnapping and retaliation
convictions.  Appellant concedes that he
did not raise a double jeopardy objection in the trial court. 








Appellant has the burden to Apreserve, in some fashion,@ a double jeopardy objection at or before the time the charge is
submitted to the jury.[12]  Because of the fundamental nature of double
jeopardy, however, a double jeopardy claim may be raised for the first time on
appeal when Athe
undisputed facts show that the double jeopardy violation is clearly apparent on
the face of the record and when enforcement of usual rules of procedural
default serves no legitimate state interests.@[13]  For the reasons discussed
below, we hold that the alleged double jeopardy violations are not clearly
apparent on the face of the record.








Appellant=s double jeopardy complaints allege multiple punishments for the same
offense.[14]  A multiple punishment double jeopardy
violation is clearly apparent on the face of the record when the record
affirmatively shows multiple punishments resulting from the commission of a
single act that violated two separate penal statutes, one of which is, on its
face, subsumed in the other.[15]
     To
determine whether two convictions impose multiple punishments under the double
jeopardy clause, we apply the Asame elements@ test
articulated in Blockburger v. United States.[16]  This test Ainquires whether each offense contains an element not contained in the
other; if not, they are the >same offen[s]e= and double
jeopardy bars additional punishment and successive prosecution.@[17]  The Texas Court of Criminal
Appeals has held that, under Blockburger, we are to consider both the
statutory elements and any additional nonstatutory allegations found in the
charging instruments.[18]

We turn first to appellant=s double jeopardy claim based on the aggravated kidnapping and
aggravated assault convictions.  The face
of the record shows that appellant was indicted for aggravated kidnapping as
follows:

[Appellant],
in the County of Tarrant and State [of Texas], on or about the 24th day of
March 2006, did with the intent to inflict bodily injury on Lisa Cleveland or
violate or abuse Lisa Cleveland sexually or terrorize Lisa Cleveland
intentionally or knowingly abduct Lisa Cleveland by restraining Lisa Cleveland
without consent by moving Lisa Cleveland from one place to another or confining
Lisa Cleveland with the intent to prevent the liberation of Lisa Cleveland by
secreting or holding Lisa Cleveland in a place Lisa Cleveland was not likely to
be found or using or threatening to use deadly force, namely burning Lisa
Cleveland with a deadly weapon, to wit: a torch, that in the manner of its use
or intended use was capable of causing death or serious bodily injury. 

 

The
jury charge on aggravated kidnapping tracked the indictment. 








The indictment for aggravated assault stated,

 

[Appellant], in the County of
Tarrant and State [of Texas], on or about the 24th day of March 2006, did
intentionally or knowingly cause bodily injury to Lisa Cleveland by burning
Lisa Cleveland with a torch and [appellant] did use or exhibit a deadly weapon
during the commission of the assault, to-wit: a torch, that in the manner of
its use or intended use was capable of causing death or serious bodily injury. 

The jury charge on aggravated assault also
tracked the indictment.








A close comparison of the two
charged offenses shows that they are based not on the commission of a single
act, but rather on different acts that include a common element.  The aggravated kidnapping charge required the
State to prove not only that appellant abducted Cleveland, but also that he did
so with the intent to inflict bodily injury on her, violate her, abuse her
sexually, or terrorize her; or that he used or exhibited a deadly weapon.[19]  To prove that appellant committed aggravated
assault, as charged, it was necessary for the State to prove that appellant
intentionally or knowingly caused bodily injury to Cleveland by using or
exhibiting a deadly weapon.[20]  Therefore, no double jeopardy violation
clearly appears on the face of the record in this case because the record does
not affirmatively show that the punishments for aggravated kidnapping and
aggravated assault resulted from the commission of a single act.

 

We turn next to appellant=s argument that his double jeopardy rights were violated by his
convictions for both aggravated assault and retaliation.  The offense of retaliation required the State
to prove that appellant intentionally or knowingly harmed Cleveland by an
unlawful act (burning her with a torch) in retaliation for or on account of the
service or status of Cleveland as a person who has reported the occurrence of a
crime.[21]  The offense of aggravated assault, on the
other hand, required the State to prove that appellant intentionally or
knowingly caused bodily injury to Cleveland and used or exhibited a deadly
weapon (a torch) during the commission of the assault.[22]









Although both offenses are
based on the commission of a single actCburning Cleveland with a torchCthe State was required to prove one or more different elements to
obtain a conviction for each offense. 
Retaliation required the State to prove that appellant harmed Cleveland
in retaliation for or on account of reporting a crime, whereas aggravated
assault required the State to prove the torch was a deadly weapon.[23]  Thus, a double jeopardy violation does not
clearly appear on the face of the record because the record does not
affirmatively show that the offense of aggravated assault is subsumed within
the offense of retaliation.[24]  

Accordingly, because
appellant=s alleged
double jeopardy violations are not clearly apparent on the face of the record,
we cannot address them.  We overrule
appellant=s third and
fourth issues.

Improper Argument








In his fifth issue, appellant
argues that the prosecutor struck at him over the shoulders of his counsel in
the State=s closing
argument.  To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or motion.[25]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.[26]


Appellant concedes that he
did not preserve error as to the allegedly improper comment.  We, therefore, overrule his fifth issue.[27]

Ineffective Assistance of
Counsel

In his second and sixth
issues, appellant argues that his trial counsel rendered ineffective assistance
by inadequately presenting the motion to withdraw and failing to preserve his
double jeopardy and improper closing argument complaints.  








To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.[28]  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.[29]








A reviewing court will rarely
be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.[30]  In the majority of cases, the record on
direct appeal is undeveloped and cannot adequately reflect the motives behind
trial counsel=s actions.[31]  To overcome the presumption of reasonable
professional assistance, any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.[32]  It is not appropriate for an appellate court
simply to infer ineffective assistance based upon unclear portions of the record.[33]


Regarding trial counsel=s performance in presenting the motion to withdraw, the record does
not contain counsel=s reasons
for failing to elaborate on the alleged conflict of interest or for failing to
call appellant to allow him to elaborate. 
It appears that trial counsel was guarded in his explanation to the
trial court because he believed professional ethical rules prevented him from
discussing the possible conflict of interest in greater detail.








Trial counsel should
ordinarily be afforded an opportunity to explain his actions before being
denounced as ineffective even where the incident reasonably raises questions as
to certain trial strategy decisions.[34]  Here, the record suggests that trial counsel
apprised the trial court, both in writing and orally, of a possible conflict of
interest, while also attempting to honor ethical obligations.  In the absence of evidence of counsel=s reasoning, the record is insufficient to overcome the presumption
that trial counsel=s conduct
falls within the wide range of professional, competent assistance.[35]


Appellant next argues trial counsel
was ineffective in failing to preserve his double jeopardy arguments.  While in some cases a Asingle egregious error@ may constitute ineffective assistance of counsel,[36]
an isolated failure to object generally does not constitute ineffective
assistance.[37]  Again, the record is silent on trial counsel=s reasons for not objecting to the charge based on double
jeopardy.  Trial counsel may have
considered the charge and concluded that double jeopardy was not violated, and,
as we have already determined, a double jeopardy violation is not clearly
apparent on the face of the record.  Or
trial counsel may have decided not to object for reasons of trial strategy.  We hold that appellant failed to rebut the
presumption that counsel acted reasonably.[38]









Finally, appellant complains
of trial counsel=s failure to
object to the prosecutor=s statement
in closing argument.  In rebuttal
argument, the prosecutor stated, 

Ladies and gentlemen, I guess when you are
sitting next to a guilty man, you will say anything.  What is the Defense here?  Was this rough sex or was it [appellant]
spilling the gas out of this canister on Lisa Cleveland?

 

See, when you are sitting next to a guilty man,
you have got to throw as much stuff against the wall and see what will
stick.  But ladies and gentlemen, I
implore you to look at the facts . . . . 


Again, an isolated failure to
object generally does not constitute ineffective assistance.[39]  In context, trial counsel may have believed
that the argument merely referenced the presence of multiple defensive theories
and did not impugn his character.[40]  Appellant has failed to rebut the presumption
that counsel acted reasonably.[41]  

For all of these reasons, we
overrule appellant=s second and
sixth issues.

Roxanne Hayes=s Testimony








In his seventh issue,
appellant argues that the trial court improperly admitted Roxanne Hayes=s testimony relating an incident somewhat similar to Cleveland=s allegations.  Over appellant=s objection, Hayes testified that she had dated appellant from 1997
through 1999, he had assaulted her, and she had also felt Aconfined@ in his
house.  Appellant also told Hayes that he
would retaliate against her and had locked her in the same trunk that Cleveland
identified.  Hayes further testified
that, although she left the house with appellant, she did not feel that she
could leave because he had threatened to kill her. 

At trial, appellant objected
to this testimony based on Texas Rules of Evidence 402 and 403.[42]  We review the trial court=s rulings on both of these grounds for an abuse of discretion.[43]








Rule 402 provides, AAll relevant evidence is admissible, except as otherwise provided . .
. .  Evidence which is not relevant is
inadmissible.@[44]  Evidence is relevant if it has
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.[45]  

The fact that appellant also
locked Hayes in the same trunk in the past made it more probable that he had
done the same to Cleveland.  Further,
Hayes=s testimony that she did not feel free to leave appellant while they
were in public together, because of his threats, tended to rebut appellant=s defense that Cleveland stayed with him voluntarily.  Hayes=s testimony was, therefore, relevant, and the trial court did not
abuse its discretion in admitting the evidence over his Rule 402 objection.

Rule 403 provides that A[a]lthough relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.@[46]  The Rule 403 balancing test
includes the following factors:

(1)
how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probableCa factor which is related to
the strength of the evidence presented by the proponent to show the defendant
in fact committed the extraneous offense;

 








(2)
the potential the other offense evidence has to impress the jury in some
irrational but nevertheless indelible way;

 

(3)
the time the proponent will need to develop the evidence, during which the jury
will be distracted from consideration of the indicted offense;

 

(4)
the force of the proponent=s need for this evidence to
prove a fact of consequence, i.e., does the proponent have other probative
evidence available to him to help establish this fact, and is this fact related
to an issue in dispute.[47]

The first and third factors
weigh heavily in favor of admissibility. 
First, Hayes=s testimony
was compelling.  Cleveland claimed that
appellant abducted her, yet several witnesses claimed to have seen appellant
and Cleveland together in public during the relevant time.  Hayes=s testimony supported Cleveland=s claim that she did not leave, even when in public, because of
appellant=s
threats.  Further, Hayes=s entire testimony before the jury comprises four pages in the record;
thus, the jury was drawn away from the indicted offenses only briefly.   








The second and fourth factors
are neutral.  Regarding the second
factor, the jury had already heard Cleveland=s allegations of the abuse suffered at appellant=s hands; Hayes=s testimony
was less detailed and no worse by comparison. 
Hayes=s testimony,
however, did reveal that appellant had abducted her in the late nineties, which
may have suggested that appellant had a chronic pattern of abducting and
abusing women.  Regarding the fourth
factor, the question of whether Cleveland was abducted or stayed voluntarily
was disputed at trial; thus, Hayes=s testimony was important to the State.  The State, however, did have some other
evidence to prove abductionCCleveland=s testimony,
which was corroborated to some extent by that of her daughter and son.[48]

Because the first and third
factors weigh heavily in favor of admissibility, and the second and fourth
factors are neutral, we hold that the trial court did not abuse its discretion
in concluding that the danger of unfair prejudice did not substantially
outweigh the probative value of this evidence. 

For all of these reasons, we
overrule appellant=s seventh
issue.

Factual Sufficiency

In his eighth, ninth, and
tenth issues, appellant challenges the factual sufficiency of the evidence to
support his three convictions.  








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party.[49]
We then ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust.[50]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[51]  








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@[52]  We cannot conclude that a
conviction is clearly wrong or manifestly unjust simply because we would have
decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.[53]  We may not simply substitute our judgment for
the fact-finder=s.[54]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@[55]  Thus, we must give due
deference to the fact-finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@[56] 

The evidence at trial showed
as follows:








Appellant and Cleveland were
drug addicts who regularly used methamphetamine during the course of their
five-year relationship.  In December
2005, appellant assaulted Cleveland and was sent to jail for some time.  On March 5, 2006, in violation of a
protective order, appellant appeared at Cleveland=s house and persuaded her to accompany him to his house to do drugs
and have sex, promising that he would Abring [her] right back.@  

        Cleveland testified that, when they
arrived at appellant=s house,
they took drugs and began to have sex, but appellant soon became angry.  Appellant said Cleveland could not be trusted
because she filed charges against him that caused him to be sent to jail, he
was not going to go back to jail, and he believed that she had been having sex
with other men.  Appellant tied Cleveland=s hands and feet, put a sock in her mouth, attached a strap to her
feet, and hoisted her from the rafters of the bedroom so that only her shoulder
and head were touching the mattress. 
While Cleveland was hanging upside down, appellant burned her back three
times with a torch.  After cutting her
down from the rafters, appellant twice poured Asomething similar to Drano@ on Cleveland=s burns.[57]









The next day, appellant
panicked when he realized the extent of Cleveland=s injuries.  Appellant locked
Cleveland in his grandmother=s old trunk, again saying she was not to be trusted.  Appellant locked Cleveland in the trunk on
several later occasions as well, sometimes dropping burning pieces of paper,
urine, and feces inside.  Outside of the
trunk, appellant poured acetone on Cleveland; threw matches at her; hit,
kicked, and tripped her; put needles under her toenails; and beat her hands and
feet with a pipe.  Further, when
Cleveland=s son came
looking for her a week after she went missing, appellant denied knowing where
she was.  

Cleveland said that appellant
locked her inside his house, and there was evidence that the front door was
difficult to open because it could be unlocked only by key, from the outside,
and the back door was nailed shut. 
During this confinement, appellant said that Cleveland would never see
her kids again and that he would burn down the house with her children in
it.  Cleveland did not attempt to leave
because she was afraid of appellant=s threats, even though she and appellant left the house together more
than once.  Several witnesses who saw
appellant and Cleveland together around the time of the kidnapping testified
that Cleveland did not seek their help or appear to be held against her
will.  Many of these witnesses, however,
were unsure of the exact date that they had seen Cleveland, and it might have
been before the kidnapping. 








On March 24, 2006, while
appellant appeared to be asleep with another woman, Cleveland found appellant=s keys, unlocked the front door, and drove appellant=s car to a friend=s house.  The friend and
Cleveland=s daughter
observed several injuries on Cleveland and insisted that she go to the
hospital. 

Brenda Lobley, an emergency
room doctor at Harris Methodist Fort Worth Hospital, testified that Cleveland
presented on March 24, 2006, with healing burns on her back and buttocks,
bruises, abrasions, healing lacerations to the scalp, an ankle fracture, and
three relatively new rib fractures.  Dr.
Lobley opined that Cleveland=s injuries constituted Aserious bodily injury.@  Dr. Lobley, however, did not
notice anything consistent with acid being poured on Cleveland=s burn and said Cleveland reported that she had been Alocked in the trunk of a car@ for twenty days.   








        Appellant testified in his own
defense.  He admitted assaulting
Cleveland in December but denied being upset with her for turning him in for that
offense. Appellant claimed that he accidentally burned Cleveland while trying
to warm himself and Cleveland with the torch during sex.  He further asserted that Cleveland tripped
over loose boards in his house, causing her broken ribs.  Appellant denied abducting, assaulting, and
retaliating against Cleveland, and he claimed she was angry with him only
because he was having sex and doing drugs with another woman.[58]  He also denied locking Cleveland or Hayes in
his grandmother=s trunk. 

Appellant contends that
Cleveland=s testimony
was not credible. Cleveland admitted that she had done drugs a few days before
trial, and several witnessesCmany of whom were related to appellantCtestified that Cleveland had a bad reputation for telling the
truth.  Credibility determinations,
however, are the sole province of the jury.[59]

Applying the appropriate
standard, we conclude that the evidence is factually sufficient to prove that
appellant committed retaliation, aggravated kidnapping, and aggravated assault
as charged.  Accordingly, we overrule appellant=s eighth, ninth, and tenth issues.

Conclusion

Having overruled all of
appellant=s issues, we
affirm the trial court=s judgment.

PER CURIAM

PANEL F: 
CAYCE, C.J.; WALKER and MCCOY, JJ.








PUBLISH

DELIVERED: 
March 20, 2008                                       











[1]See Tex. R. App. P. 47.4.





[2]See
Hubbard v. State, 739 S.W.2d 341, 344 (Tex. Crim. App. 1987). 





[3]Garner
v. State, 864 S.W.2d 92, 98 (Tex. App.CHouston
[1st Dist.] 1993, pet. ref=d).  





[4]Malcolm
v. State, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel
Op.]  1982); Webb v. State, 533
S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976).





[5]King
v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Williams v. State,
154 S.W.3d 800, 802 (Tex. App.CHouston [14th Dist.] 2004,
pet. ref=d).





[6]Holloway
v. Arkansas, 435 U.S. 475, 484B87,
98 S. Ct. 1173, 1178B80
(1978) (holding that trial court erred in not investigating counsel=s
assertion of conflict of interest based on multiple representation); Lerma
v. State, 679 S.W.2d 488, 492B93, 497 (Tex. Crim. App.
[Panel Op.] 1982) (op. and op. on reh=g) (presuming conflict of
interest and harm, and reversing and remanding for new trial, where trial court
knew or should have known of potential conflict of interest but failed to hold
hearing); see also Dunn v. State, 819 S.W.2d 510, 519 (Tex. Crim. App.
1991) (declining to limit rule to conflicts of interest based on representation
of co-defendants), cert. denied, 506 U.S. 834 (1992). 





[7]See
Calloway v. State, 699 S.W.2d 824, 830B31
(Tex. Crim. App. 1985) (finding no error where trial counsel did not elaborate
on his claim of conflict of interest); Thompson v. State, 94 S.W.3d 11,
20B22
(Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d) (holding no error where
attorney stated conflict arose from representation of another private client
but refused to give details); Harrell v. State, No. 12-00-00356-CR, 2002
WL 31656213, at *3 (Tex. App.CTyler Nov. 26, 2002, pet. ref=d)
(not designated for publication) (holding trial court was not obligated to
conduct further inquiry following mere assertion of a conflict of interest); Frazier
v. State, 15 S.W.3d 263, 265B66 (Tex. App.CWaco
2000, no pet.) (finding no abuse of discretion to deny post-conviction motion
to withdraw that alleged conflict of interest where trial counsel did not offer
any specific facts).





[8]Appellant
also filed several pro se documents complaining of his trial counsel.  On December 4, 7, and 11, 2006, appellant
filed pro se declarations of conflict between attorney and client.  On December 7, 2006, he filed a motion to
request appointed counsel.  On December
7, 2006, and January 29, 2007, appellant filed handwritten letters complaining
of trial counsel.  





[9]Appellant
did not testify at the hearing but the trial court noted he A[shook]
his head in the negative@
after his attorney rested. 





[10]One
of appellant=s
handwritten letters to the trial court (dated December 7, 2006) stated that
Cleveland hired his trial counsel=s law firm to defend her
common law husband in another criminal matter. 
On appeal, however, appellant concedes that there is no indication that
the trial court was aware of this document on the January 8 hearing. 





[11]See
Calloway, 699 S.W.2d at 830B31;
Thompson, 94 S.W.3d at 20B22; Harrell, 2002 WL
31656213, at *3; Frazier, 15 S.W.3d at 265B66.





[12]Gonzalez
v. State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  





[13]Id. at
643.





[14]See
Langs v. State, 183 S.W.3d 680, 685 (Tex. Crim. App.
2006).  





[15]See
Perez v. State, No. 02-06-00225-CR, 2007 WL 2744914, at *6
(Tex. App.CFort
Worth Sept. 20, 2007, pet. ref=d) (mem. op., not designated
for publication).





[16]Langs, 183
S.W.3d at 685 (citing Blockburger v. United States, 284 U.S. 299, 52 S.
Ct. 180 (1932)); see also Garrison v. State, Nos. 02-04-00450-CR,
02-04-00451-CR, 2005 WL 1594258, at *6 (Tex. App.CFort
Worth July 7, 2005, pet. ref=d) (not designated for
publication) (applying Blockburger to determine whether error was
clearly apparent on face of the record).





[17]United
States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856
(1993).





[18]See
Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).





[19]See Tex. Penal Code Ann. '
20.04(a)(4)B(5),
(b) (Vernon 2003).





[20]See
id. '' 22.01,
22.02(a)(2) (Vernon 2003 & Supp. 2007).





[21]See id.
'
36.06(a)(1)(B) (Vernon 2003 & Supp. 2007).





[22]See id.
'' 22.01(a)(1),
22.02(a)(2).





[23]See
Girdy v. State, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006)
(holding that if the State, in proving the elements of one charged offense,
also necessarily proves another charged offense, then that other offense
is a lesser included offense and multiple punishments are barred); Landry v.
State, 227 S.W.3d 380, 382 (Tex. App.CTexarkana 2007, no pet.)
(holding that, where State did not allege use of a deadly weapon in capital
murder indictment, aggravated assault by the use or exhibition of a deadly
weapon contained an additional element and was, therefore, not a lesser
included offense of capital murder as alleged); Rodriguez v. State, No.
04-04-00230-CR, 2005 WL 899963, at *2 (Tex. App.CSan
Antonio Apr. 20, 2005, pet. ref=d) (mem. op., not designated
for publication) (AProof
of the use or exhibition of a deadly weapon is an essential element of the
offense of aggravated assault as it was charged in the indictment [under penal
code section 22.02(a)(2)].@).





[24]See Tex. Penal Code Ann. '' 22.01(a)(1),
22.02(a)(2), 36.06(a)(1)(B); cf. Jacob v. State, 892 S.W.2d 905, 909
(Tex. Crim. App. 1995) (holding that Abecause evidence showing a
completed aggravated assault is not part of the facts legally required to show
burglary with intent to commit aggravated assault . . . aggravated assault is
not a lesser included offense of burglary under Section 30.02(a)(1)@).





[25]Tex. R.
App. P. 33.1(a)(1); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S.
1070 (1999). 





[26]Tex. R.
App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  





[27]See
Threadgill v. State, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004)
(overruling appellant=s
improper argument point where appellant failed to preserve error).





[28]Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett
v. State, 65 S.W.3d 59, 62B63 (Tex. Crim. App. 2001); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 





[29]See
Salinas, 163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.





[30]Thompson, 9
S.W.3d at 813B14.





[31]Salinas, 163
S.W.3d at 740 (quoting Mallett, 65 S.W.3d at 63).





[32]Id.
(quoting Thompson, 9 S.W.3d at 813).





[33]Mata
v. State, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).





[34]See
Rylander v. State, 101 S.W.3d 107, 110B11
(Tex. Crim. App. 2003); Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim.
App. 2002).





[35]See
Freeman v. State, 125 S.W.3d 505, 506B07
(Tex. Crim. App. 2003); Rylander, 101 S.W.3d at 110B11; Bone,
77 S.W.3d at 836B37; Thompson,
9 S.W.3d at 814.





[36]E.g., Andrews
v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) (holding that record
was sufficient to allow decision on merits and that counsel rendered
ineffective assistance by failing to object to prosecutor=s
misstatement of the law).





[37]See
Scheanette v. State, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); Ingham
v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).





[38]See
Thompson, 9 S.W.3d at 814.





[39]See
Scheanette, 144 S.W.3d at 510; Ingham, 679 S.W.2d at
509.





[40]See
Guy v. State, 160 S.W.3d 606, 617 (Tex. App.CFort
Worth 2005, pet. ref=d)
(holding that Aa
prosecutor risks improperly striking at a defendant over the shoulder of
counsel when the argument refers to defense counsel personally and when the
argument explicitly impugns defense counsel=s character@).





[41]See
Thompson, 9 S.W.3d at 814.





[42]On
appeal, he also briefs Rule 404(a) and (b). 
We consider, however, only those grounds that appellant advanced in the
trial court.  Tex. R. App. P. 33.1; see Mendez, 138 S.W.3d at 341B42.





[43]Wyatt
v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000) (Rule
403);  Brown v. State, 96 S.W.3d
508, 511 (Tex. App.CAustin
2002, no pet.) (Rule 401).





[44]Tex. R. Evid. 402.





[45]Tex. R. Evid. 401.





[46]Tex. R. Evid. 403.





[47]Wyatt, 23
S.W.3d at 26 (internal quotation marks omitted). 





[48]Cleveland=s
daughter testified that her mother told her on March 24 that appellant had
abused her and would not let her leave. 
Further, her son testified that appellant denied knowing where Cleveland
was one week after she went missing, although appellant later admitted that she
was with him during that time. 





[49]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).





[50]Watson, 204
S.W.3d at 414B15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).





[51]Watson, 204
S.W.3d at 417.





[52]Id.





[53]Id.





[54]Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[55]Johnson, 23
S.W.3d at 8.





[56]Id. at
9.





[57]When
officers later searched appellant=s home, they found, among
other items, Aa gas
cannister typically used with a portable torch@
(although the torch component was not found), straps attached to exposed
rafters in the bedroom, a pipe, and Aa plastic bag containing a
drain flow bottle.@  Detective Brian Jamison testified that the
torch would be considered a deadly weapon if used on a person.   





[58]Cleveland
admitted that she was mad that appellant was ignoring her immediately before
her escape. 





[59]E.g., Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (holding that the jury
is the exclusive judge of the credibility of witnesses and the weight to be
given their testimony).